**INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, Local Asbestos Workers No. 2, AFL–CIO, by Fred Rust, Jr., an officer of said Union on behalf of said Union, et al., Plaintiffs,**

v.

**UNITED CONTRACTORS ASSOCIATION, INC. OF PITTSBURGH, PENNSYLVANIA, a corporation, and Associated Trades and Crafts Union, Defendants.**

Civ. A. No. 70–1475.

United States District Court,
W. D. Pennsylvania.

Aug. 6, 1971.

Stanford A. Segal, Gatz, Cohen & O'Brien, Pittsburgh, Pa., for plaintiffs.

Burton C. Duerring, Pittsburgh, Pa., Timothy P. O'Reilly, Bridgeville, Pa., for defendants.

## OPINION ON MOTIONS TO DISMISS

TEITELBAUM, District Judge.

This is an action brought by twenty-eight labor unions against an association of construction contractors, the United Contractors Association, Inc. of Pittsburgh, Pennsylvania, and a labor union, the Associated Trades and Crafts Union. It alleges that United Contractors has created Associated Trades for the purposes of representing the employees of and executing collective bargaining agreements with its member companies. It alleges further that the member companies of United Contractors compel their employees to become members of Associated Trades and then exact funds from them to contribute to its financial support. The conclusion of the plaintiffs is that these arrangements are combinations in restraint of trade in violation of the Sherman and Clayton Antitrust Acts. The defendants, on the other hand, urge that what the plaintiffs actually allege are arguably unfair labor practices which are subject to the primary jurisdiction of the National Labor Relations Board. On that theory the defendants have moved to dismiss the action. Alternatively, the defendants' Motions to Dismiss are based on the immunity afforded the activities of labor organizations from the antitrust laws.

The most recent restatement of the doctrine of primary jurisdiction appears in Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L. Ed.2d 473 (June 14, 1971). In that case, the Supreme Court read its decision in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773, 3 L.Ed.2d 775 (1959), as having established,

"* * * the general principle that the National Labor Relations Act preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act".

Initially, we note that the application of this doctrine turns on the conduct alleged. In *Lockridge* the Court stated that,

"[I]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern".

For a plaintiff to color the conduct alleged with descriptive legal conclusions, therefore, would be unavailing. The instant factual allegations, bared of plaintiffs' legal descriptions, clearly depict conduct which is arguably within the proscriptions of § 8(a)(2) of the National Labor Relations Act which makes it an unfair labor practice for employers to "assist" or "dominate" a labor union. See, e. g., Tuscarora Plastics Company, 167 N.L.R.B. 1059 (1967). That the conduct alleged may give rise to other legal causes of action is of no consequence. The plaintiffs' conclusion that the conduct alleged is violative of the antitrust laws, no matter how sound that conclusion may be, then, would not serve to remove this action from the tentacles of the doctrine of primary jurisdiction. For other reasons, however, the doctrine is not here applicable.

The rationale of the Court in *Lockridge* was founded on the design of the doctrine of preemption "* * * to shield the system from conflicting regu-

lation of conduct". The Court observed that,

> "[T]he principle of pre-emption that informs our general national labor law was born of this Court's efforts, *without the aid of explicit congressional guidance*, to delimit state and federal judicial authority over labor disputes in order to preclude, so far as reasonably possible, conflict between the exertion of judicial and administrative power in the attainment of the multifaceted policies underlying the federal scheme". [Emphasis supplied.]

Continuing, the Court suggested that,

> " * * * nothing could serve more fully to defeat the congressional goals underlying the [National Labor Relations Act] than to subject, without limitation, the relationships it seeks to create to the concurrent jurisdiction of state and federal courts free to apply *the general local law*". [Emphasis supplied.]

The purpose of the preemption principle is to keep the workings and the underlying policies of the national labor laws free from interference from the general local law. Consistent with this limited purpose are the factual settings of *Lockridge* and *Garmon*, both of which involved the application by state courts of local law to situations arguably the concern of the Federal labor laws. This purpose would not seem to be disserved, however, when the law sought to be invoked is a Federal statute rather than the general local law. If the need to accommodate a certain Federal regulatory scheme with the Federal labor laws arises, the accommodation would best be accomplished by reversion to announced congressional policy rather than to the judicially forged doctrine of primary jurisdiction. In Prepmore Apparel, Inc. v. Amalgamated Clothing Workers, 431 F. 2d 1004 (C.A.5, 1970), the Court observed this difference, and noted that the *Garmon* decision was not intended to be extended " * * * beyond activities

which a state purports to regulate to include federal regulation such as embodied in the Sherman Act".[1] We think that is a correct reading of *Garmon*, particularly since the interrelationship of the antitrust laws with the national labor laws is a subject on which the Congress has spoken. In providing immunity for activities which are encouraged or protected by the labor laws from the application of the antitrust laws, the Congress has expressly furnished the judiciary with guidelines for the preservation of the policies of the labor laws. Afforded these guidelines, then, there is no need to apply the preemption principles of *Garmon* and *Lockridge*. Rather, the accommodation process should be controlled, as suggested in Allen Bradley Co. v. Local Union No. 3, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), by the determination of, " * * * how far Congress intended activities under one of these policies to neutralize the results envisioned by the other".

▪ Conclusively, this seems to be the clear and controlling import of Local Union No. 189, Amalgamated Meat Cutters of North America v. Jewel Tea Co., 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965). In that case the Supreme Court squarely resolved in the negative, the question of,

> "[W]hether a claimed violation of the Sherman Antitrust Act which falls within the regulatory scope of the National Labor Relations Act is within the exclusive primary jurisdiction of the National Labor Relations Board".

Thus, the jurisdiction of this Court to entertain the instant action is not preempted by the doctrine of primary jurisdiction and we turn to determine whether or not the alleged activities are substantively immune from an antitrust attack.

Unlike the judicially created doctrine of primary jurisdiction, the immunity provided labor organizations from the

1. Cf., *contra*, Salerno v. American League of Professional Baseball Clubs, 429 F.2d 1003 (C.A. 2, 1970).

antitrust laws is, as noted, Congressional in origin. Section 6 of the Clayton Act, 15 U.S.C. § 17, provides that the labor of a human being is not to be considered a commodity or article of commerce, and that,

> "[N]othing contained in the antitrust laws shall be construed to forbid the existence and operation of labor * * * organizations * * *."

Further, Section 20 of the Clayton Act, 29 U.S.C. § 52, and § 2 of the Norris-LaGuardia Act, 29 U.S.C. § 102, taken together, decree that "concerted activities for the purpose of collective bargaining" are not to be held violative of "any law of the United States".[2]

■■ The scope of these immunity provisions has been much considered by the Supreme Court. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940); United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941); Allen Bradley Co. v. Local Union No. 3, supra; United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Amalgamated Meat Cutters v. Jewel Tea Co., supra; American Federation of Musicians v. Carroll, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968). The general principle which emerges from these cases is that activities of a labor organization which are in legitimate pursuit of normal and proper labor organization objectives are immune, *Apex Hosiery, Hutcheson, Jewel Tea,* and *Carroll;* while activities which are designed to affect competition in the industry or market in which the non-labor

group competes are not immune, *Allen Bradley* and *Pennington.* When a collective bargaining agreement is alleged to contravene the antitrust laws the crucial consideration becomes whether or not the agreement is designed, expressly or tacitly, to adversely affect competition in a market in which the non-labor group competes.[3] The labor organization stands to forfeit its immunity only if it aids the non-labor group in frustrating the antitrust laws. Allen Bradley Co. v. Local Union No. 3, *supra.*

■ Notwithstanding the bald conclusion that competition in the construction industry of Western Pennsylvania is adversely affected by the instant collective bargaining agreement (competition in which the plaintiffs, in any event, have no justiciable interest), the plaintiffs in this case allege no facts which would even remotely taint the immunity provided the defendant Associated Trades from the antitrust laws. By § 6 of the Clayton Act, the existence of Associated Trades is expressly insulated from the antitrust laws. As to the collective bargaining agreement, the competition which it is alleged to foreclose is not that in a market in which the non-labor group competes, but rather that of the competition between labor organizations for the right to represent certain employees. This competition is clearly not the *concern* of the antitrust laws.[4] Further, the aid of which the plaintiffs complain in the instant action flows from the non-labor group to the labor organization which is the reverse of that condemned in *Allen Bradley* and *Pen-*

---

2. In Carroll v. American Federation of Musicians, 372 F.2d 155 (C.A.2, 1967), vacated and remanded on other grounds 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968), the Court noted that while Norris-LaGuardia was "* * * cast in terms of the federal courts' jurisdiction to grant injunctive relief", it applied equally in criminal, citing United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941), and civil cases. See American Federation of Musicians v. Carroll, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968).

3. In addition to the Supreme Court decisions, see Intercontinental Container Transport Corp. v. New York Shipping Ass'n, 426 F.2d 884 (C.A.2, 1970); Prepmore Apparel, Inc. v. Amalgamated Clothing Workers, *supra;* and Cedar Crest Hats, Inc. v. United Hatters, etc., 362 F.2d 322 (C.A.5, 1966).

4. On the other hand, this competition is the concern of the labor laws. See, e. g., Avco Manufacturing Corp., 106 N.L.R.B. 1104 (1953).

*nington.* We conclude, therefore, that the alleged activities are immune from the antitrust laws and this action must be dismissed. An appropriate Order will be entered.