**Elmer BERNSTEIN et al.,
Plaintiffs-Appellants,**

v.

**UNIVERSAL PICTURES, INC., et al.,
Defendants-Appellees.**

**No. 535, Docket 74–2169.**

United States Court of Appeals,
Second Circuit.

Argued May 12, 1975.

Decided May 27, 1975.

Theodore W. Kheel, New York City (Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, on the brief), for plaintiffs-appellants.

Simon Rose, New York City (Robert R. Salman, Janet P. Kane, and Martin Stein, New York City, of counsel; Phillips, Nizer, Benjamin, Krim & Ballon, Cahill, Gordon & Reindel, Donovan, Leisure, Newton & Irvine, Hawkins, Delafield & Wood, Shea, Gould, Climenko & Kramer, and Simpson, Thacher & Bartlett, New York City, on the brief), for defendants-appellees.

Ronald S. Rolfe, New York City (Cravath, Swaine & Moore, New York City, on the brief), for defendant-appellee Columbia Broadcasting System, Inc.

Before KAUFMAN, Chief Judge, FEINBERG, Circuit Judge, and JAMESON, District Judge.*

IRVING R. KAUFMAN, Chief Judge:

This elaborate class action was conceived by 71 talented creators, all composers and lyricists, members of the Composers and Lyricists Guild of America [CLGA], and brought against 15 producers of motion pictures and television shows. Judge Brieant abruptly brought down the curtain on plaintiffs' production, however, when, *sua sponte,* he dismissed the complaint on the ground that the matter was within the exclusive jurisdiction of the NLRB. We find that the dismissal was premature since issues of fact remain to be resolved, and consequently that, in the tradition of the entertainment industry, the curtain must rise again.

I

The composers'[1] complaint alleges that the producers, acting—appropriately enough—in concert, refused to contract for their services except on certain standard terms, which reserved to the producers the copyright and other ownership rights in the words and music composed on their behalf. This was asserted to constitute a conspiracy in restraint of trade, as well as an attempt to monopolize the sheet music publishing industry.

The standard terms were contained in three contracts, entitled "Minimum Basic Agreements," negotiated and signed in 1960, 1965, and 1967 by CLGA and the trade association of the motion picture producers, the Association of Motion Picture and Television Producers [AMPTP]. The three television networks, also defendants herein, were not members of AMPTP nor participants in the negotiations, but allegedly contracted with composers on terms similar to those contained in the agreements. Although each of the successive contracts, which represented the minimum terms under

---

* Of the District of Montana, sitting by designation.

1. The term "composers" as used hereinafter is intended to include lyricists.

which composer's services could be obtained, provided increased wages and shares of the copyright royalties, the producers steadfastly refused to accede to CLGA's demand for copyright ownership by the individual composers.

This issue came to a head in November of 1971, when negotiations between CLGA and AMPTP reached an impasse over copyright ownership. On November 30, the composers launched what proved to be an unsuccessful strike, and simultaneously filed a charge with the National Labor Relations Board alleging that AMPTP's refusal to bargain over copyright ownership violated § 8(a)(3) of the Act. On January 31, 1972, a general membership meeting of CLGA approved the commencement of an antitrust suit against the producers, and the complaint was filed seven days later. On March 7, CLGA withdrew its unfair labor practice charge[2] because—the composers now assert—they realized that the Board would have no jurisdiction, since they were independent contractors rather than employees.

The producers answered the antitrust charges with the usual denials; in addition they raised the affirmative defenses that their conduct was protected by the labor exemption to the antitrust laws, and that the subject matter of the controversy was within the primary and exclusive jurisdiction of the NLRB.[3] In July of 1973, the composers moved pursuant to Fed.R.Civ.P. 12(f) and 56 to strike these affirmative defenses. Judge Brieant found Rule 56 an inappropriate vehicle for dismissal of affirmative defenses, and ruled the motion under Rule 12(f) untimely. He dismissed the complaint on his own initiative under Rule 12(h)(3), however, concluding that the refusal to bargain with respect to copyright ownership was a labor dispute over

which the NLRB had exclusive jurisdiction. The composers appeal.

II

The composers contend that whether the NLRB had exclusive jurisdiction depends on a disputed issue of fact—the status of composers as employees or independent contractors—which could not be resolved on the papers before the district court. Section 8(a)(3), they correctly point out, refers to "labor organizations;" labor organizations are collections of "employees," § 2(5), a term whose definition excludes independent contractors, § 2(3). Thus, the composers maintain, the Board had no jurisdiction if the composers were not employees, and the complaint was improperly dismissed in advance of a determination of that factual question.

There can be little doubt that a district court should be alert to terminate an action under Rule 12(h)(3) when lack of subject matter jurisdiction becomes apparent. Judicial resources are precious, particularly in view of the courts' steadily burgeoning caseload, and they should not be dissipated in futile proceedings. Indeed, the lack of jurisdiction is so fundamental a defect that the rule permits a judge to recognize it *sua sponte* at any time.

But like summary judgment, a "procedural weapon to pierce sham claims and resolve actions where the facts are undisputed," American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 278 (2d Cir. 1967), *sua sponte* dismissals of the kind before us are justified only where the underlying facts are not subject to fair dispute. Even where both parties may urge the absence of any material factual issues,

---

**2.** AMPTP filed a parallel charge, accusing CLGA of striking over a nonmandatory subject of bargaining. On June 15, 1972, the Regional Director informed AMPTP that the copyright was a mandatory subject of bargaining and that he was dismissing its charge.

**3.** The action against Columbia Broadcasting Systems, Inc. was severed by stipulation, and CBS's answer was deferred until May 1, 1974. Despite the severance, and even though CBS never asserted the labor defenses, the district court, in a supplemental opinion, dismissed the complaint as to it as well.

we have counselled district judges to be cautious, lest haste to avoid a trial lead to premature resolution of contested matters. *Id.* at 279–80. And particularly in complex antitrust litigation, although the benefits of avoiding a trial may be substantial, the courts have stressed the inappropriateness of deciding issues of fact before they have been fully developed. *See, e. g., id.*, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Premier Electrical Construction Co. v. Miller-Davis Co., 422 F.2d 1132, 1138 (7th Cir. 1970).

■ In holding that the NLRB had exclusive jurisdiction, the district judge noted that CLGA had conducted itself as a labor union for two decades, that it had been certified by the Board on August 19, 1955 after a consent election as the exclusive bargaining representative for composer employees of a number of motion picture producers, and indeed that the instant dispute arose out of the breakdown in negotiation over a new collective bargaining agreement.

■ While these facts are surely probative, they do not resolve the issue. With respect to the certification, the composers forcefully maintain that it discloses little about their employee status, since the election was consented to by the producers, and that in any event, the unit certified specifically excluded all independent contractors. Nor can it be said that the activity of CLGA for the past two decades is dispositive, since antitrust jurisdiction cannot be declined simply because independent contractors masquerade as a union. *See, e. g.,* Los Angeles Meat & Provision Drivers Union v. United States, 371 U.S. 94, 83 S.Ct. 162, 9 L.Ed.2d 150 (1962); American Medical Ass'n v. United States, 317 U.S. 519, 533–36, 63 S.Ct. 326, 87 L.Ed. 434 (1943); Columbia River Packers Ass'n, Inc. v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750 (1942).

In addition, there is substantial evidence in the record tending to show that the composers are not in fact employees.

On two occasions, the National Labor Relations Board has ruled that composers were independent contractors. American Broadcasting Co. 117 NLRB 13 (1957) (composers hired by American Broadcasting Co.); Alliance of Television and Film Producers, Inc. No. 21–RC–7995 (1963) (composers hired by, *inter alia,* defendant MCA, Inc.). Indeed, the record suggests that the composers contract for a specific output, work at their own pace at home, and are not subject to day-to-day supervision by the producers. It may be, consequently, that the producer has no right to control the manner in which work is performed, so that under the test of NLRB v. United Insurance Co., 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), and Herald Co. v. NLRB, 444 F.2d 430, 432–33 (2d Cir.), cert. denied, 404 U.S. 990, 92 S.Ct. 532, 30 L.Ed.2d 541 (1971) the composers are independent contractors. *See also* Lorenz Schneider & Co. v. NLRB, 445 F.2d 517 (2d Cir. 1975). It is plain, therefore, that the status of composers is at least a strongly contested factual issue, resolution of which was critical to a determination of the Board's exclusive jurisdiction.

### III

■ The producers quite properly admit that the status of the composers is a contested factual issue. They contend, however, that dismissal was nonetheless proper, since the federal law of labor relations has preempted the field. Under the test established by San Diego Building Trades v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959):

> When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

Thus, the producers maintain, since it is at least arguable that the composers are employees, federal antitrust jurisdic-

tion would be preempted under *Garmon's* "arguably subject" test.[4]

The defect in this position, however, is that the courts have not applied the federal preemption doctrine to the antitrust laws, but have, instead, engaged in a detailed examination to determine whether the labor exemption to the antitrust laws applies. In Local Union 189, Amalgamated Meatcutters v. Jewel Tea Co., 381 U.S. 676, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965), for example, the Court considered whether an agreement by a butcher union and a group of employers to close food stores at 6 P.M. violated the Sherman Act by preventing Jewel from keeping longer hours; but none of the three opinions in that case suggested that the antitrust laws were inapplicable because the agreement's restriction *arguably* related to working hours. *Accord,* International Ass'n of Heat & Frost Insulators v. United Contractors Ass'n, 331 F.Supp. 1298, 1299–1300 (W.D.Pa.1971), vacated on other grounds, 483 F.2d 384, 388 (3d Cir. 1973), modified, 494 F.2d 1353 (3d Cir. 1974); Prepmore Apparel Inc. v. Amalgamated Clothing Workers, 431 F.2d 1004, 1007 n.2 (5th Cir. 1970). *See also* Meltzer, Labor Unions, Collective Bargaining, and the Antitrust Laws, 32 U.Chi.L.Rev. 659, 699 (1965) (preemption doctrine inapplicable to antitrust laws). Thus, it is plain that the *Garmon* "arguably subject" test cannot be applied to preempt an antitrust claim.[5]

The producers also contend that dismissal was proper despite the existence of a disputed factual issue since the composers, who for two decades have acted like employees and members of a union, are now estopped from denying their employee status. For several reasons, this argument has little merit. Initially, a determination whether the equitable doctrine of estoppel applies involves questions of fact—the conduct of CLGA and the detrimental reliance of the producers—which can themselves be determined only after a hearing. Moreover, if estoppel is to be invoked it is difficult to see why it should not be applied as well to a number of the defendants, particularly the television networks, who have repeatedly, and sometimes successfully, taken the position that the composers are independent contractors.

■ Even more fundamentally, however, it appears to us that it is highly unlikely that estoppel can be readily allowed to defeat antitrust claims. As the Supreme Court said in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968):

> We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes.

In fact, the *Perma Life* Court held that an active participant in an illegal scheme was not precluded by the doctrine of *in pari delicto* from challenging that scheme in a treble-damage action. It is apparent that a plaintiff who has previously asserted a contrary legal position is

---

**4.** The *Garmon* rule seems equally applicable where the "arguable" issue may be thought of as jurisdictional. Marine Engineers Beneficial Ass'n v. Interlake S.S. Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962) (issue whether workers were employees or supervisors).

It appears that the district court adopted the producers' view of the applicability of the preemption doctrine, since it relied heavily on Buckley v. AFTRA, 496 F.2d 305 (2d Cir.), cert. denied, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974). We held there that the *Garmon* rule prevented a first amendment challenge to a requirement of union membership and obedience to union rules, since the matter could be the subject of an unfair labor practice. Although we spoke of "arguably" unfair labor practices, however, the acts complained of were quite clearly subject to § 8 of the Act. *See id.* at 312–13 n.5.

**5.** In so holding, we do not decide whether the *Garmon* test is applicable to other federal causes of action, whether or not embodied in specific statutes, *compare* Buckley v. AFTRA, *supra* n.4, *with* Prepmore Apparel, *supra*, 431 F.2d at 1007 n.2, or whether a claim that a particular problem is within the exclusive jurisdiction of the NLRB presents a defense distinct from one based on the labor exemption to the antitrust laws.

no less deserving of antitrust relief than one who comes into court with the unclean hands of an antitrust violator. Hence, estoppel cannot be a greater barrier to antitrust relief than is *in pari delicto*. *See also* Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) (licensee of patent not estopped from challenging patent's validity). Although in such cases the character or practices of the plaintiff may make it unpalatable to afford him a substantial monetary recovery, precluding his antitrust action would "seriously undermin[e] the usefulness of the private action as a bulwark of antitrust enforcement." *Perma Life Mufflers, supra*, 392 U.S. at 139, 88 S.Ct. at 1984.

■■ We do not hold today that under no circumstances will estoppel be a sufficient defense to an antitrust action. As a majority of the court recognized in *Perma Life*, a plaintiff may properly be denied antitrust relief when his culpability is equal to that of the defendant. *See, e. g.,* Pearlstein v. Scudder & German, 429 F.2d 1136, 1141 (2d Cir. 1970), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971); Columbia Nitrogen Corp. v. Royster Co., 451 F.2d 3, 15–16 (4th Cir. 1971); Premier Electrical Constr. Co. v. Miller-Davis Co., 442 F.2d 1132, 1138 (7th Cir. 1970). *See generally* Skouras Theatres Corp. v. Radio-Keith Orpheum Corp., 58 FRD 357, 359–60 (S.D.N.Y.1973) and cases there cited. But we need express no opinion concerning the appropriate scope of this exception to the *Perma Life* rule, or regarding a comparable exception for defenses based on estoppel. Resolution of these questions should properly be deferred until the facts of this case are more fully developed at a trial or hearing.

## IV

■ The sole issue remaining for our consideration is whether the determination of the composers' status should be made in the first instance by the court, or by the National Labor Relations Board. We were advised at oral argument that CLGA has filed with the

Board a petition for unit clarification to which seven of the producer defendants were parties. A hearing was held and the record was closed last December, the parties have filed briefs, and now await the Board's decision. We believe that in view of the advanced stage of the Board proceedings and to avoid the possibility of conflicting decisions, it would be a more practical course for the district court to hold further proceedings in abeyance pending the Board's determination.

Reversed and remanded for further proceedings consistent with this opinion.