**NORLITE CORPORATION, Plaintiff,**

v.

**LOCAL 106–106B OF INTERNATIONAL UNION OF OPERATING ENGINEERS and Wayne Horvitz, Federal Mediation And Conciliation Director, Defendants.**

No. 80–CV–391.

United States District Court, N. D. New York.

Jan. 9, 1981.

Hayes & Lapetina by Harry R. Hayes, III, Albany, N. Y., for plaintiff.

Sol Rubenstein, Albany, N. Y., for defendant Local.

George H. Lowe, U. S. Atty., Syracuse, N. Y., for defendant Horvits.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This suit was brought by Norlite Corporation (hereinafter, "Norlite") against Local 106–106B of the International Union of Operating Engineers (hereinafter, "Union") and Wayne Horvitz, Federal Mediation and Conciliation Director, to enjoin arbitration of a labor dispute arising from Norlite's discharge of two employees. Norlite also seeks to recover monetary damages against the Union for a wild cat strike in violation of the applicable collective bargaining agreement. In its answer and counterclaim, the Union denies the allegations concerning the alleged wild cat strike, and asserts that the disputed discharges are subject to arbitration. On the latter point, the Union seeks an order to compel arbitration.

On September 15, 1980, this matter came before the Court on cross motions for summary judgment on behalf of the Union and Norlite. Both motions relate solely to the arbitrability of the employee discharges.[1] The Court also heard defendant Horvitz's motion to dismiss the complaint on the ground that it fails to state a claim against him on which relief can be granted. Following the hearing, the parties consented to entry of an order dismissing the complaint against defendant Wayne Horvitz on the condition that he not appoint an arbitrator to resolve the employee discharge dispute pending a determination of the arbitrability of those discharges. The Court having reserved decision now addresses the remaining parties' cross motions for summary judgment.

Norlite is a New York corporation engaged in the operation of a rock quarry in Cohoes, New York. The defendant Union is a labor organization with its principal place of business in Albany, New York. Norlite and the Union are signatories to a collective bargaining agreement which governs their respective obligations in connection with operations at the quarry. The arbitration clause in the Agreement provides in relevant part:

*ARTICLE X* (Disputes)

A. In the conduct of any work under this Agreement, the Company agrees that there shall be no lockout, and the Union agrees that there shall be no strike, slowdown, or stoppage of work. Any and all disputes involving interpretation or application of this Agreement which cannot be resolved locally shall be referred to the designated representative of the Union and he or his representative shall meet with a designated representative of the Company so that the parties may ascertain the facts and render a decision thereon.

1. Neither party has addressed the merits of Norlite's claim for monetary damages based on the alleged wild cat strike.

B. In the event that the representative of the Company and the representative of the Union are unable to settle such dispute, they shall refer it within fifteen (15) days of their first consideration of such dispute to an impartial arbitrator whose decision shall be final and binding upon all parties. If the parties are unable to agree on an impartial arbitrator, the matter shall be referred to the Federal Mediation and Conciliation Service for the designation of an arbitrator pursuant to the rules of said service. Such impartial arbitrator shall not have jurisdiction or authority to add to, detract from, or alter in any way the provisions of this Agreement. . . .

The present dispute between the parties arose on or about April 18, 1980, when Norlite discharged Joseph Bramski and James Niland for alleged misconduct. Both employees are members of the defendant Union. On April 21, 1980, George Paul Moran, the business manager of the Union, contacted an officer of Norlite in an attempt to resolve the dispute over the discharges, but this informal effort proved unsuccessful. Thereafter, some preliminary steps were taken by the parties concerning the designation of an arbitrator. Affidavit of George Paul Moran, ¶¶ 6, 7.

On April 24, 1980, the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") based on the discharges. Shortly thereafter, Norlite advised the Union that the company was no longer willing to arbitrate the dispute. On May 5, 1980, the Union served Norlite with a Notice of Intention to Arbitrate pursuant to N.Y.C.P.L.R. § 7503(c); in response, Norlite filed this action on May 15, 1980, to enjoin arbitration of the dispute.[2] Meanwhile, the Regional Director of the NLRB notified the parties that the

Board was deferring a determination of the unfair labor practice charge pending arbitration of the dispute. The Court is informed that no further proceedings have taken place before the NLRB.

■ The dispositive issue raised by the cross motions for summary judgment is whether the disputed employee discharges are subject to arbitration under the terms of the collective bargaining agreement in effect between the parties at the time the dispute arose. Because the agreement between Norlite and the Union does not manifest a contrary intention, resolution of this threshold question is properly for the Court and not the arbitrator. *Gangemi v. General Electric Co.*, 532 F.2d 861, 865 (2d Cir. 1976). The Court is not concerned with the merits of the underlying dispute; rather, the Court's role is to decide whether the parties have agreed to submit a specific dispute to arbitration. *See United Steel Workers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343 n.7, 4 L.Ed.2d 1403 (1960); *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 n.7, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). In making this determination the Court must examine the collective bargaining agreement within the broader framework of the now longstanding national policy favoring private, extrajudicial resolution of labor disputes. *Id.*; see also, *Gangami, supra*, 532 F.2d at 865; *John W. McGrath Corp. v. Atlantic Coast District ILA*, No. 80–CV–150, Slip Op. at 5 (N.D.N.Y. March 6, 1980). In recognition of this strong national policy, the Supreme Court ruled in *United Steel Workers v. Warrior & Gulf Navigation Co., supra*, 363 U.S. at 582–83, 80 S.Ct. at 1353, that:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

---

**2.** For its second counterclaim and affirmative defense, the Union asserted that Norlite should be estopped from claiming that the disputes are not arbitrable by reason of its failure to make a timely response to the Notice of Intention to Arbitrate. However, the Union now takes the

position that the defense of untimeliness, "may be considered withdrawn." Affidavit of Sol Rubenstein, attorney for Local 106–106B, ¶ 7 (September 3, 1980). Accordingly, the Court will not address this issue.

dispute. Doubts should be resolved in favor of coverage.

In short, where the agreement contains a broad arbitration clause together with a no-strike clause, arbitrability of disputes is the rule and non-arbitrability the exception. To be sure, the parties to such agreements may effectively preclude arbitration of specific disputes but, "the language of the agreement purporting to do so must be 'clear and unambiguous' or 'unmistakably clear.'" *Gangemi, supra,* 532 F.2d at 865, quoting, *International Ass'n of Mach. & A. Wkrs. v. General Electric Co.,* 406 F.2d 1046 (2d Cir. 1969); *International Union of E. R. & M. Wkrs. v. General Electric Co.,* 407 F.2d 253 (2d Cir. 1969), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217.

Here, the collective bargaining agreement contains both a no-strike provision and a broad arbitration clause which, by its terms, embraces "(a)ny and all disputes involving interpretation or application of this Agreement...." Moreover, there is no language in the arbitration clause which even purports to exclude from its scope disputes over employee discharges. Notwithstanding this broad language, Norlite takes the position that because the Agreement contains no explicit provisions pertaining to the discharge of non-probationary employees for cause, there is no basis for an arbitrable dispute involving interpretation or application of the Agreement. The unstated premise on which this argument depends is the proposition that under the Agreement Norlite has reserved the right to discharge non-probationary employees at will. Thus, if there is any contractual limitation on management's right to discharge, the absence of any language excluding disputes over such discharges from the scope of the arbitration clause supports the Union's contention of arbitrability.

The Union contends that such a limitation on management's right to discharge can reasonably be inferred from Article VIII (Seniority) which provides that new and rehired employees shall be regarded as probationary employees for the first thirty days of actual work and, "(d)uring such period such employees may be laid off or discharged as exclusively determined by the Company." The Union argues that this last clause would be meaningless if Norlite could discharge non-probationary employees at will. The Union also points out that if Norlite can discharge non-probationary employees at will and if such discharges are for that reason non-arbitrable, then the bargained-for benefits and privileges of seniority are thereby subject to unilateral nullification.

The Union contends further that Norlite's claim that the discharges are non-arbitrable is wholly inconsistent with the broad no-strike clause in the Agreement. Finally, the Union asserts that its claims concerning a just cause limitation on management's right to discharge and the resultant arbitrability of the disputed discharges here involved are further supported by the past practice of the parties under the Agreement. Specifically, the Union states that Norlite's earlier discharge of Bramski (one of the employees involved in the present dispute) was referred to arbitration and the arbitrator found, among other things, that the discharge was not for just cause.

In the face of the facts and arguments advanced by the Union, the Court is unable to say with positive assurance that the arbitration clause in this Agreement "is not susceptible of an interpretation that covers the asserted dispute." *See Johnston-Tombigee Furniture Manufacturing Co. v. Local Union No. 2462, U. B. of C. and J. of America, AFL–CIO,* 596 F.2d 126 (5th Cir. 1979) (notwithstanding contract provision excluding from arbitration those discharges supported by just cause, questions concerning the meaning and existence of just cause in connection with the discharge of particular employee are proper matters for arbitration). While not conclusive on the issue of arbitrability, the parties' past practice of submitting disputed discharges to arbitration is a significant factor and one which undercuts the rather extreme position advanced by Norlite in this case. *Cf. United Steelworkers v. Warrior & Gulf Navigation*

*Co., supra,* 80 S.Ct. at 1351–4 (a collective bargaining agreement is more than a contract for it "calls into being a new common law—the common law of a particular industry or of a particular plant.") This Court is also mindful of the thrust of Justice Douglas' observation: "When, however, an absolute no-strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement...." *Id.* at 1353.

In the final analysis, Norlite's position of non-arbitrability is not based on any express exclusionary language in the Agreement. Without voicing any opinion on the merits of the underlying employee discharges, the Court is persuaded that those discharges are subject to arbitration. Accordingly, Norlite's motion for summary judgment is denied, and the Union's motion for summary judgment on its first counterclaim is granted.

■ For a second cause of action, Norlite alleges that the Union failed to prevent or terminate a wild cat strike that occurred on April 11, 1980. Relying on the no-strike clause in Article X of the Agreement, Norlite seeks a determination that the Union is liable for any back pay that may be awarded if the two discharged employees are eventually ordered reinstated. Norlite's theory of recovery on this claim is not entirely clear. While it is alleged that the employees were discharged on the day that the wild cat strike occurred, Norlite contends that the misconduct which formed the basis for the discharges was the employees' assault on a business customer, not their participation in the alleged wild cat strike. In any event, it is apparent from examining the record in this case that both causes of action involve the same nucleus of operative facts and that the Union's liability on the second cause of action depends in large part upon disputed facts within the scope of the arbitration clause. Having determined that the disputed discharges are subject to arbitration, the Court concludes that the second cause of action is premature at this time. Unless and until it is determined through arbitration that the employees are entitled to reinstatement and back pay, there is no live controversy between the parties with respect to the second cause of action. Accordingly, the Court lacks subject matter jurisdiction and the second cause of action must be dismissed at this time. *See Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976, 979 (2d Cir. 1975).

It is, therefore,

ORDERED, that:

(a) the motion for summary judgment in favor of plaintiff Norlite Corporation is denied;

(b) the motion for summary judgment in favor of defendant Local 106–106B of International Union of Operating Engineers is granted as to the first counterclaim; and

(c) the plaintiff Norlite Corporation's second cause of action is dismissed.

IT IS SO ORDERED.