Alphonse W. STEWART, Plaintiff,

v.

**MARQUETTE TOOL AND DIE COMPANY, INCORPORATED, and District 9 of the International Association of Machinists and Aerospace Workers, Defendants.**

No. 72C715(4).

United States District Court, E. D. Missouri, E. D.

March 31, 1975.

Jerome A. Diekemper, Bartley, Goffstein, Bollato & Lange, Clayton, Mo., for District 9, International Association of Machinists and Aerospace Workers.

## MEMORANDUM OPINION

NANGLE, District Judge.

This action was brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 to redress alleged racial discrimination in employment. The action was tried to the Court sitting without a jury. Being fully advised in the premises of the action, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff Alphonse W. Stewart, a Negro male, is a resident of St. Louis County, Missouri.

2. Defendant Marquette Tool and Die Company, Inc. ("Marquette") is a Missouri corporation with its principal place of business in this judicial district. Marquette manufactures tools and metal stamping products for sale in the automobile manufacturing industry and is an employer within the meaning of 42 U.S.C. § 2000e(b).

3. Defendant District 9, International Association of Machinists and Aerospace Workers ("Union") is the bargaining representative for employees at Marquette.

4. On August 5, 1969, plaintiff was hired by Marquette as a turret lathe specialist in the tool room department. His duties required him to read blueprints, set up the turret lathe machine with the proper tooling, and manufacture an acceptable product part. Stewart was assigned to the Union's local lodge No. 1345, which represents employees of both the tool room department and the production department. Stewart was paid a salary rate equivalent to a specialist's salary under the local lodge No. 688 labor agreement.

5. While working as a turret lathe specialist plaintiff occasionally required the aid of the other turret lathe specialist to perform difficult tasks. Plaintiff occasionally

Harold L. Whitfield, St. Louis, Mo., for plaintiff.

Thomas M. Hanna, McMahon & Berger, Clayton, Mo., for Marquette Tool & Die Co.

made substantial production errors. On separate occasions he consumed an entire shift producing unneeded parts, made substantial errors in producing steel bushings, and encountered problems producing gear blanks.

6. Before entering employment with Marquette, Stewart lived in California for twenty-five years. While employed with Marquette he expressed a desire to return to California to live.

7. From September 1, 1970, to September 17, 1970, the Union engaged in a strike against Marquette. Stewart participated in the strike as a picket and as a picket captain. The labor-management negotiations resulted in the establishment of the new job classification of machine operator, at a pay rate less than that of specialist. Labor and management agreed that the machine operator would merely operate a machine that had been set up by another employee. Previously, a specialist would have been required to set up and operate the machine. An operator could operate several machines; a specialist operated only one machine. After work resumed, Marquette employed no one as a turret lathe specialist.

8. Following the strike termination, Marquette recalled employees as needed. Production work had decreased and plaintiff was not recalled. Other Negroes were recalled to work.

9. The day after the strike ended, Stewart returned to the plant to inquire about his recall. He returned a second time approximately ten days later when he spoke with Elmer Freber, president of Marquette, and informed him he was quitting to return to California. He gathered his tools and left. On a personnel control form in Stewart's personnel file was noted the following:

"is quitting effective 9/17/70 and is not subject to rehire. Reason: Quit to return to California. Don't recommend rehire due to excess scrap rate—not qualified to make efficient set ups."

10. Sometime after advising Marquette that he was quitting Stewart telephoned Don Freber, Marquette's general manager, and asked for employment only in his former position of lathe specialist. Stewart was advised that this position was no longer available because there was not enough full-time lathe work to warrant employing a specialist.

11. On March 11, 1971, Stewart returned to Marquette and observed two Caucasian male employees operating the turret lathe machine he operated alone before the strike. Both were operators. One of these men was Forrest Hogeland, an employee with less seniority than Stewart. Hogeland had been employed by Marquette off and on since June, 1963, having quit and been rehired three times. His work, however, was of a high quality—higher than that of the plaintiff. Hogeland had a wide knowledge of Marquette's work and was capable of operating many of Marquette's machines.

12. Within a few days Stewart filed a labor grievance. On April 1, 1971, a labor-management grievance meeting was held to consider Stewart's grievance. The Union requested that Stewart be put on the seniority list by a letter dated April 7, 1971, Marquette refused. On April 5, 1971, George Thess, Union Business Representative, informed plaintiff that the Union would decline to process the grievance to arbitration, which decision was based upon evidence that Stewart had voluntarily quit his employment with Marquette. Under the subject labor agreements, the rehiring of former employees whose seniority rights have been terminated was the exclusive function of Marquette and was not subject to the grievance procedure. The Union's reason for not processing Stewart's grievance to arbitration was its good faith belief that it could not prevail in arbitration.

13. On July 15, 1971, Stewart filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") against Marquette. The charge was deferred to the Missouri Commission on a Human Rights for the required period of time. A charge of racial discrimination was filed against the Union on March 22, 1972. On August 30, 1972, Stewart received the EEOC notice of his right to

bring suit against Marquette within ninety days. On November 13, 1972, plaintiff commenced this action against Marquette. On January 10, 1973, plaintiff received notice of his right to sue the Union and suit was brought against the Union.

14. From 1950 to 1968 Marquette employed no Negroes. Stewart was the first Negro employed as a skilled worker.

## CONCLUSIONS OF LAW

 The Court is persuaded that subject matter jurisdiction does not exist under Title VII of the Civil Rights Act of 1964. Plaintiff terminated his employment in September, 1970. By April 7, 1971, plaintiff was aware that his employment claim was rejected by both Marquette and the Union. The first EEOC charge of employment discrimination was filed by Stewart on July 15, 1971, more than ninety days after the alleged discrimination. At the time Stewart's claim arose Title VII required filing within ninety days. 42 U.S.C. § 2000e–5(d) (1971). Failure to file a timely charge deprives this Court of jurisdiction. *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228 (8th Cir. filed February 12, 1975).

Subject matter jurisdiction of this action exists as granted by 28 U.S.C. § 1343(4). *See* the Court's order filed April 13, 1973.

 Plaintiff asserts that Marquette's failure to rehire him or to recall him from layoff following the strike was racially discriminatory. To sustain his claim for relief plaintiff must prove that Marquette's failure to re-employ him was racially motivated. 42 U.S.C. § 1981; *see Brady v. Bristol-Meyers, Inc.,* 459 F.2d 621 (8th Cir.1972). A statistical showing may make a *prima facie* case of discrimination. *See, e. g., Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir.1970). In our view of the evidence Marquette has sufficiently rebutted such a *prima facie* case and has proven that its failure to re-employ plaintiff was based upon its belief that he was not fit for re-employment, due to his work performance record, and that the position for which he applied, i. e. turret lathe specialist, was not sufficiently profitable to be filled.

Stewart failed to prove that this rebuttal was pretextual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

It does not avail plaintiff to compare his qualifications with those of Forrest Hogeland since Hogeland's work quality record was substantially higher than plaintiff's.

 Plaintiff asserts that the Union failed to fairly represent him in the prosecution of his grievance procedure remedies because of his race. *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 478 F.2d 979 (1973). This alleged discrimination is based upon the Union's failure to seek arbitration of his grievance. The Court has found that the Union's decision was based on a good faith belief that plaintiff's grievance could not prevail in arbitration. The Union's decision was not racially motivated.

Finding no merit in the plaintiff's claims, I will dismiss the action with prejudice.