**Debora D. GORDON, Appellant,**

v.

**NATIONAL YOUTH WORK ALLIANCE.**

**No. 81–1284.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 20, 1981.

Decided April 2, 1982.

Robert L. Bell, Washington, D. C., for appellant. Dudley R. Williams, Washington, D.C., entered an appearance for appellant.

Arthur W. Adelberg, Washington, D. C., for appellee. Albert H. Turkus and Maxine D. Howard, Washington, D. C., were on the brief for appellee.

Before ROBINSON, Chief Judge, BAZELON, Senior Circuit Judge, and WRIGHT, Circuit Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

Concurring opinion filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

J. SKELLY WRIGHT, Circuit Judge:

Debora Gordon appeals from an order dismissing her suit against her former employer, the National Youth Work Alliance (NYWA), charging it with violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976 & Supp. III 1979), and with violations of 42 U.S.C. §§ 1981, 1985 (1976) and the District of Columbia's Human Rights Law, 1 D.C.Code § 2550 *et seq.* (1981). The District Court granted appellee NYWA's motion to dismiss solely on the basis that the court lacked subject matter jurisdiction because the plaintiff had not filed suit within the 90-day time limit prescribed by Title VII, *see* 42 U.S.C. § 2000e–5(f)(1) (1976). We reverse.[1]

NYWA fired appellant, a black woman, in December 1979, shortly after she had a series of disputes with her white, male supervisors. She filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the District of Columbia Office of Human Rights, neither of which found reasonable cause to pursue her complaint. The EEOC regional office in Baltimore accordingly sent Gordon a notice of her right to sue, dated with a stamp in the lower left corner "OCT 07 1980." The notice letter was mailed to Gordon's home address in Washington, D.C., return receipt requested, and the Postal Service eventually returned the following receipt to the Baltimore EEOC office:

---

1. In addition to the question discussed below, we hold that the District Court had no basis for dismissing appellant's non-Title VII claims. They were subject only to the applicable statute of limitations in the District of Columbia, *see Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), which allows such actions to be brought within three years of the harm giving rise to the cause of action. 12 D.C.Code § 301(8) (1981).

SENDER: Complete items 1, 2, and 3.
Add your address in the "RETURN TO" space on reverse.

1. The following service is requested (check one).

[X] Show to whom and date delivered............ 15¢

[ ] Show to whom, date, & address of delivery.. 35¢

[ ] RESTRICTED DELIVERY.
Show to whom and date delivered............ 65¢

[ ] RESTRICTED DELIVERY.
Show to whom, date, and address of delivery 85¢

2. ARTICLE ADDRESSED TO:

Ms. DeborahD. Gordon

3. ARTICLE DESCRIPTION:

| REGISTERED NO. | CERTIFIED NO. | INSURED NO. |
|---|---|---|
| | P15 6408928 | |

(Always obtain signature of addressee or agent)

I have received the article described above.

SIGNATURE [ ] Addressee [ ] Authorized agent

4. X Vinona Gordon

DATE OF DELIVERY 10-7-80

5. ADDRESS (Complete only if requested)

6. UNABLE TO DELIVER BECAUSE: CLERK'S INITIALS

It is signed by one Vinona Gordon, apparently appellant's mother, and dated, apparently in the same hand, "10-7-80." There is also a round stamp in the space marked "Postmark" showing the date as "OCT 9 1980." Appellant filed suit in the District Court on January 7, 1981—90 days after October 9, but 92 days after October 7.

NYWA submitted a motion to dismiss for lack of subject matter jurisdiction, citing Federal Rule of Civil Procedure 12(b)(1) and attaching copies of the right-to-sue letter and the return receipt. The gravamen of NYWA's motion was that Gordon received notice of her right to sue on October 7, the handwritten date on the return receipt. Gordon opposed the motion on the ground that it was more likely that the letter was sent on October 7 and received on October 9, given the dates stamped on the letter and the receipt. The District Court granted NYWA's motion in a brief order:

Upon consideration of defendant's motion to dismiss for lack of jurisdiction over the subject matter, the opposition thereto, and the entire record herein, and it appearing to the Court that the plaintiff has failed to timely file her complaint pursuant to 42 U.S.C. § 2000e–5(f)(1) (1976) plaintiff's action must be dismissed for lack of subject matter jurisdiction. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 798 [93 S.Ct. 1817, 1822, 36 L.Ed.2d 668] (1973); *Wong v. Bon Marche,* 508 F.2d 1249 (9th Cir. 1975). * *

Appendix A to appellant's brief at A–1.

Title VII requires that plaintiffs file suit within 90 days of receiving notice from the EEOC of their right to sue. 42 U.S.C. § 2000e–5(f)(1) (1976). The sole question at issue in this case is how a defendant and the court should treat a motion to dismiss based on the defendant's contention that the plaintiff has filed suit after expiration of the 90-day period. NYWA moved to dismiss on this basis under Rule 12(b)(1), and it supported its theory that Rule 12(b)(1) applied with the argument that "[f]ailure to bring an action under the section within 90 days deprives a federal court of subject matter jurisdiction." Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter at 2, *reproduced in* Appendix A to appellant's brief at A–13, *citing Hinton v. CPC International, Inc.,* 520 F.2d 1312, 1315 (8th Cir. 1975). The sentence quoted from *Hinton,* however, is not apposite to this case. It refers to a long-standing dispute among the circuits as to what the Supreme Court meant by referring to the time limits for bringing suit under Title VII as "jurisdictional," *see Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1975); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973).[2] The Supreme Court has now sub-

2. Some courts had held that, like statutes of limitations, Title VII's time provisions are subject to modification on equitable grounds, while others had held that the time limits are jurisdic-tional absolutes that could not be modified for equitable reasons. *Compare Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975), *with Hinton v. CPC International,*

stantially resolved this dispute in *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), which holds that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in a federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at ——, 102 S.Ct. at 1132.

■■■ Statutes of limitations generally create affirmative defenses. Although affirmative defenses may be raised on a motion to dismiss, the proper method for raising a defense of limitation is a motion under Rule 12(b)(6), not a motion under Rule 12(b)(1). · *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1277 at 331–332 (1969 ed.). The difference between them is that under Rule 12(b)(6) the court may not consider matters outside the pleadings and accompanying legal memoranda without converting the motion into one for summary judgment and affording all parties "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). The purpose of this proviso, added in the 1946 Amendments to the Federal Rules, was twofold: it gave the District Courts authority to consider factual material at the motion to dismiss stage, but it also sought "to avoid taking a party by surprise * * *." *See* Notes of Advisory Committee on 1946 Amendment to Rules, 28 U.S.C. app. at 409–410 (1976).

■■■ Precisely because of this safeguard in Rule 12(b)(6)—requiring close attention to the manner in which factual questions are resolved—it makes sense to treat motions like the one at issue here as Rule 12(b)(6) motions. In addition, *Zipes* makes it clear that Title VII's time limits are more like statutes of limitations than like conditions on the court's subject matter jurisdiction. Although *Zipes* deals only with the time limit for filing charges of discrimination with the EEOC, *see* 42 U.S.C. § 2000e–5(e) (1976), its logic extends to the time limit for filing suit after receiving a right-to-sue letter from the EEOC, *see* —— U.S. at ——, 102 S.Ct. at 1132, 1135. Therefore, Rule 12(b)(6) and its proviso clearly apply, and it would be error to grant a motion to dismiss on factual grounds unresolved by the pleadings.

■■■ Fairness, not excessive technicality, is the guiding principle under both Title VII, *see Zipes, supra,* —— U.S. at ——, 102 S.Ct. at 1134; *Love v. Pullman,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972), and the Federal Rules of Civil Procedure. The mandatory language in which Rule 12(b)'s proviso is couched underscores the importance of providing plaintiffs with the essential safeguards of summary judgment procedure whenever they face a motion to dismiss that turns on questions of fact. Even under Rule 12(b)(1), procedural safeguards equivalent to those in Rule 56 are required, with Rule 56 used selectively as a guide to ensuring fairness. *See Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1131 (2d Cir. 1976); *Barrett v. United Hospital,* 376 F.Supp. 791, 795 & n.14 (S.D.N.Y.), *aff'd,* 506 F.2d 1395 (2d Cir. 1974). Where facts material to a jurisdictional time limit are in dispute, both fairness and analogy to Rules 12(b)(6) and 56 require that the court provide the parties a full opportunity to air their factual dispute. Furthermore, they direct the court to take evidence on the question if the parties' affidavits do not suffice to eliminate all genuine issues of material fact. *See Williamson v. Tucker,* 632 F.2d 579, 588–589 (5th Cir. 1980).[3]

The importance of fair procedures in factfinding at any stage requires this ap-

---

*Inc.,* 520 F.2d 1312 (8th Cir. 1975), *and Wong v. Bon Marche, Inc.,* 508 F.2d 1249 (9th Cir. 1975). *See generally* Note, *Equitable Modification of Time Limitations Under Title VII,* 48 U.Chi.L. Rev. 1016 (1981). This circuit agreed with the Fifth Circuit that the time limits are subject to equitable modification. *See Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d

711, 718 n.23 (D.C.Cir.1978); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 474–475 (D.C. Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

**3.** Possible differences between procedures under Rule 12(b)(1) and Rule 12(b)(6) have been the source of some considerable trouble, *see,*

proach, whether or not the parties invoke the precise words in the Federal Rules. Under either Rule 12(b)(1) or Rule 12(b)(6), a court need not consider matters outside the pleadings at all. But once it decides to consult such matters it should so inform the parties and set a schedule for submitting additional affidavits and documents if the parties wish.

▇▇▇▇ Accordingly, since the District Court did not so notify the parties, we may sustain the dismissal only if it meets the stringent standard for dismissal without regard to matters outside the pleadings: "[I]t appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414–415 (5th Cir. 1980) (in context of statute of limitations question). The 90-day limit aside, Gordon pleaded an adequate cause of action under Title VII. Neither her complaint nor her answer to NYWA's motion to dismiss concedes that she received notice of her right to sue before October 9. Without considering the return receipt, it is hard to imagine how the District Court could address, much less decide, NYWA's contention that the suit was not timely filed. Therefore, dismissal of Gordon's case on the pleadings alone could not have been proper.

Given that the District Court clearly considered "the entire record herein," including matters outside the pleadings, it did not provide plaintiff "reasonable opportunity" to present relevant material. It did not inform the parties that it was considering the motion as if it were a motion for summary judgment, nor did it solicit further submissions on the question of which day Debora Gordon received notice of her right to sue. The debate over possible factual inferences in both parties' papers should have put the court on notice that it needed a great deal more information before deciding that there was no material issue of fact in dispute.[4] Under the mandatory phrasing of Rule 12(b), the court's failure to provide a fair procedure for submission of affidavits or other factual material is reversible error, even though Gordon did not raise the issue precisely in her opposition to NYWA's motion to dismiss.

The order dismissing appellant's case for lack of jurisdiction over the subject matter is therefore reversed, and the case is remanded to the District Court for further proceedings on the issue whether appellant's suit was timely filed.

*Reversed and remanded.*

SPOTTSWOOD W. ROBINSON, III, Chief Judge, concurring:

Manifestly, the date of Gordon's receipt of the right-to-sue notice is fairly open to

---

*e.g., Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 890–892 (3d Cir. 1977), but they are not particularly relevant to the type of issue presented in this case. For instance, a court may not grant a motion for summary judgment if the record, considered in the light most favorable to the nonmoving party, discloses a genuine issue of material fact; yet under Rule 12(b)(1) a court has the power to hold a hearing and resolve conflicting testimony against the plaintiff. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511–512 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). But where, as here, the plaintiff has no right to a jury trial on the issue, a court has considerable latitude in determining a statute of limitations issue even if the facts remain in dispute after the parties have an opportunity to augment the record. *See, e.g., Nardone v. Reynolds*, 538 F.2d 1131, 1137–1138 (5th Cir. 1976). The obvious solution is to deny the motion for summary judg-

ment without prejudice and then hold a limited evidentiary hearing on the timeliness issue before proceeding to a full trial on the merits, a procedure which in effect duplicates the proper procedure under Rule 12(b)(1).

4. Appellant might have been able to submit affidavits showing several sets of facts raising an inference that she did not receive notice of her right to sue until October 9. She has offered to prove that the Baltimore office of the EEOC does not postdate its letters, making it unlikely that the letter was mailed in Baltimore and received in Washington on the same day. She might be able to show that the Postal Service regularly postmarks return receipts on the day of delivery, or that Vinona Gordon was unsure of the date when she signed for the letter. These possibilities make dismissal improper under the *Conley* test, and none is excluded by the pleadings.

dispute, and Gordon has had no chance to demonstrate her version of the facts bearing thereon. Thus I agree that the viability of her Title VII claim remains an issue yet to be soundly determined. I agree, too, that Gordon's non-Title VII claims faced no problem of untimeliness, or, from aught that presently appears, any other justification for dismissal. I part company with my colleagues, however, in their exposition of the methodology available for fact-resolution incidental to disposition of Rule 12(b)(1) motions. Their formulation, I think, analogizes functionally different Rule 12(b)(1) and (6) procedures, and, I fear, needlessly encumbers the straightforward factfinding processes which historically have protected litigants in Rule 12(b)(1) controversies. So, while I concur unhesitatingly in remand of this case for appropriate proceedings, I state my reasons separately.

## I

Even if the motion to dismiss had posed a bona fide problem of subject-matter jurisdiction, the District Court's action could not be sustained. Gordon's complaint charged employment discrimination violative of Title VII of the Civil Rights Act of 1964 [1] and three other statutory schemes as well.[2] The motion, expressly invoking Rule 12(b)(1), alleged that her suit was not launched within the 90 days statutorily prescribed for institution of Title VII litigation,[3] and urged that the court was without jurisdiction on that account.[4] As both the motion [5] and Gordon's response [6] reflected, the debate focused principally on the discrepant handwritten and stamped dates on the return receipt,[7] and on the question of just when Gordon received notice of her right to sue. Without soliciting evidence or information of any sort to elucidate the matter,[8] the District Court granted the motion and dismissed.[9]

Subject-matter jurisdiction of a federal district court may, of course, be challenged by a Rule 12(b)(1) motion,[10] though by no means is that the only method.[11] Should facts critical to jurisdiction be in dispute, as ofttimes they are,[12] the court must make

1. 42 U.S.C. §§ 2000e et seq. (1976 & Supp. III 1979).

2. Complaint (filed Jan. 7, 1981) ¶ 1, Gordon v. National Youth Work Alliance, Civ.No. 81-38 (D.D.C.), Appellant's Appendix (App.) 2. The other statutes assertedly infringed are 42 U.S.C. §§ 1981, 1985 (1976), and the District of Columbia Human Rights Act, D.C.Code §§ 1-2501 et seq. (1981).

3. Defendant's Motion to Dismiss (filed Feb. 2, 1981) at 2, Gordon v. National Youth Work Alliance, supra note 2, App. 13; see 42 U.S.C. § 2000e-5(f)(1) (1976).

4. Defendant's Motion to Dismiss (filed Feb. 2, 1981) at 2, Gordon v. National Youth Work Alliance, supra note 2, App. 13.

5. Id. at 1, App. 12.

6. Plaintiff's Opposition to Defendant's Motion to Dismiss (filed Feb. 13, 1981) at 1, Gordon v. National Youth Work Alliance, supra note 2, App. 23.

7. See at 359.

8. See note 20 infra.

9. Gordon v. National Youth Work Alliance, supra note 2, (order) (filed Feb. 27, 1981), App. 1.

10. "[T]he following defenses may at the option of the pleader be made by motion: ... lack of jurisdiction over the subject matter...." Fed. R.Civ.P. 12(b)(1).

11. See discussion in 5 C. Wright & A. Miller, Federal Practice § 1350 at 544-545 (1969). Additionally, a court may, sua sponte, inquire into the basis for its jurisdiction. E.g., Butler v. Dexter, 425 U.S. 262, 263 n.2, 96 S.Ct. 1527, 1529 n.2, 47 L.Ed.2d 774, 776 n.2 (1976); Bernstein v. Universal Pictures, Inc., 517 F.2d 976, 979 (2d Cir. 1975); Pacific Towboat & Salvage Co. v. ICC, 620 F.2d 727, 729 (9th Cir. 1980); Fed.R.Civ.P. 12(h)(3) (court must dismiss action whenever it appears, by suggestion of parties or otherwise, that court lacks subject-matter jurisdiction).

12. Of course, a factual dispute is not inevitably a concomitant of a Rule 12(b)(1) motion. The challenge may be, not to the actual existence of jurisdiction, but merely to the sufficiency of jurisdictional allegations in the pleading attacked, see Fed.R.Civ.P. 8(a)(1), and in that event, disagreement over the facts may never arise. If the difficulty is no more serious than inadequate jurisdictional allegations, the defect may be curable simply by amendment. See 28 U.S.C. § 1653 (1976); Fed.R.Civ.P. 15(a); Kaufman v. Western Union Tel. Co., 224 F.2d

appropriate inquiry,[13] and must satisfy itself on authority to entertain the case.[14] The court has considerable leeway in devising procedures in that direction,[15] and may resort to written or live evidence submitted in connection with the motion.[16] The nonmoving party must, however, be afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.[17] This simple, direct methodology strikes me as adequate to meet fully and fairly the exigencies of fact-determination on dismissal motions of this type.[18]

The course pursued in the District Court, however, was quite different. The legal principle central to resolution of the squabble over timeliness of Gordon's Title VII suit was that the 90-day filing period was not triggered until the right-to-sue notice was actually received.[19] The crucial fact—

---

723, 725 (5th Cir. 1955), *cert. denied*, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); *Jones v. Freeman*, 400 F.2d 383, 387 (8th Cir. 1968).

**13.** *E.g., Land v. Dollar*, 330 U.S. 731, 735 n.4, 67 S.Ct. 1009, 1011 n.4, 91 L.Ed. 1209, 1214 n.4 (1947), and cases there cited. If, however, the issue on jurisdiction is intertwined with the merits of the case, the decision on jurisdiction should be postponed until trial. *Id.* at 735, 67 S.Ct. at 1009, 91 L.Ed. at 1209; *Jaconski v. Avisun Corp.*, 359 F.2d 931, 935 (3rd Cir. 1966); *Fireman's Fund Ins. Co. v. Railway Express Agency*, 253 F.2d 780, 784 (6th Cir. 1958); *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969).

**14.** *E.g., Bernstein v. Universal Pictures, Inc.*, *supra* note 11, 517 F.2d at 979; *Mortenson v. First Fed'l Savs. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977); *Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir. 1979).

**15.** *Land v. Dollar, supra* note 13, 330 U.S. at 735 n.4, 67 S.Ct. at 1011 n.4, 91 L.Ed. at 1214 n.4; *Gibbs v. Buck*, 307 U.S. 66, 71–72, 59 S.Ct. 725, 729, 83 L.Ed. 1111, 1115 (1939); *Seth v. British Overseas Air Corp.*, 329 F.2d 302, 305 (2nd Cir.), *cert. denied*, 379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61 (1964); *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980).

**16.** *Land v. Dollar, supra* note 13, 330 U.S. at 735 n.4, 67 S.Ct. at 1011 n.4, 91 L.Ed. at 1214 n.4; *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–1131 (2nd Cir. 1976); *Green v. Forney Eng'g Co., supra* note 14, 589 F.2d at 246; *Berardinelli v. Castle & Cooke, Inc.*, 587 F.2d 37, 39 (9th Cir. 1978); see also *Urquhart v. American-La France Foamite Corp.*, 79 U.S.App.D.C. 219, 221, 144 F.2d 542, 544, *cert. denied*, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625 (1944); Fed.R.Civ.P. 43(e) ("[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition").

**17.** *Urquhart v. American-La France Foamite Corp., supra* note 16, 79 U.S.App.D.C. at 221, 144 F.2d at 544; *Local 336, Am. Fed'n of Musicians v. Bonatz*, 475 F.2d 433, 437 (3d Cir.

1973); *Cooper v. United States Penitentiary*, 433 F.2d 596, 597 (10th Cir. 1970); see also *Weisman v. LeLandais*, 532 F.2d 308, 309 n.3 (2nd Cir. 1976).

**18.** Analogy to the optional conversion of a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment thus confers on nonmoving parties no safeguards that Rule 12(b)(1) case law does not already provide. It may assist an effort simply to ascertain whether an issue of fact material to subject-matter jurisdiction is genuinely presented, see *Exchange Nat'l Bank v. Touche Ross & Co., supra* note 16, 544 F.2d at 1131, but extended further it can only pervert the conversion process to a use never intended. For

> [t]he motion to dismiss for failure to state a claim raises matter in bar and, if sustained without leave to plead further, results in a judgment on the merits. On the other hand defenses numbered (1)–(5) and defense numbered (7) of Rule 12(b) do not raise matters in bar. Since under Rule 56 on summary judgment only matters on the merits can be raised and if a judgment is rendered thereunder it is one in bar, it was proper to integrate defense numbered (6), failure to state a claim, with Rule 56, and not integrate the other defenses specified in Rule 12(b) with the summary judgment rule.

2A J. Moore & J. Lucas, Federal Practice ¶ 12.09 at 2313 (1981) (footnote omitted). Thus the impropriety of transforming Rule 12(b)(1) motions into summary-judgment motions is well-settled. *Stanley v. CIA*, 639 F.2d 1146, 1158 (5th Cir. 1981); *Timberlane Lumber Co. v. Bank of Am.*, 549 F.2d 597, 602 (9th Cir. 1976); *Progressive Steelworkers Union v. International Harvester Corp.*, 70 F.R.D. 691, 692 (N.D.Ill. 1976); *Sheldon v. Amperex Elecs. Corp.*, 52 F.R.D. 1, 10 (E.D.N.Y.), *aff'd*, 449 F.2d 146 (2d Cir. 1971); 5 C. Wright & A. Miller, Federal Practice § 1366 at 676 (1969); 2A J. Moore & J. Lucas, Federal Practice ¶ 12.09 at 2297 (1981). Certainly the analogy is not needed to secure for the nonmoving litigant the opportunity to battle his opponent on equal terms.

**19.** *Shehadeh v. Chesapeake & Potomac Tel. Co.*, 193 U.S.App.D.C. 326, 332 n.22, 595 F.2d

the date of receipt—could not, however, be soundly determined simply by inspection of the return receipt.[20] The matter was not probed more deeply, nor was Gordon given a chance to establish facts supportive of her position; instead, the court, without benefit of more than the parties' written submissions, dismissed the case in toto.[21] Had, then, the question on the motions truly been subject-matter jurisdiction, this mode of dealing with it would require reversal.

## II

More fundamentally, the problem confronting the District Court was of an entirely different sort, and so too was the legal theory upon which the court should have gone forward. Correctly analyzed, the case comes to this. Timely commencement of a Title VII action ordinarily is a precondition to its maintenance, but Title VII's 90-day suit-filing requirement for private-sector litigation has no relationship to subject-matter jurisdiction. Thus, while timeliness is an essential element of the plaintiff's claim, tardiness does not affect the court's power to entertain it. For that reason, a charge of noncompliance with the 90-day provision is properly presented, not by a motion under Rule 12(b)(1), but rather by one under Rule 12(b)(6), which summons distinctive procedures. To a discussion of these propositions I now turn.

Federal courts have frequently referred to Title VII's time limitations on litigation-initiation, whether done administratively or judicially, as "jurisdictional" prerequisites.[22] This undoubtedly explains why both the movant and the District Court deemed untimeliness a default auguring jurisdictional consequences. Usually, however, the cases have left considerable uncertainty as to the precise meaning which in the particular context the court intended to ascribe to the

711, 717 n.22 (1978), and cases there cited; *Bell v. Brown*, 181 U.S.App.D.C. 226, 229–230 n.27, 557 F.2d 849, 852–853 n.27 (1977), and cases there cited; *Archie v. Chicago Truck Drivers Union*, 585 F.2d 210, 215 (7th Cir. 1978).

**20.** Two questions conceivably confronted the District Court. The first was whether the notice of right to sue was delivered at Gordon's residence on October 7, 1980, or two days later. If it did not arrive until October 9, Gordon's action was timely, and the motion to dismiss should have been denied. If, on the other hand, delivery was made on October 7—slightly more than 90 days prior to institution of Gordon's suit—the further question would have been whether receipt of the notice by Gordon's mother was legally equivalent to receipt by Gordon herself and, if not, just when it reached Gordon. The District Court may have accepted the handwritten "10–7–80" on the return receipt as the date of delivery, and the stamped "OCT. 9 1980" as part of the postmark signifying the mailing of the signed receipt back to the sender, and from that may have reasoned that October 7 was the date on which the 90-day period began. This factual deduction may be correct, but it does not follow necessarily from the dates alone, nor does it touch the problem of whether receipt of the notice by the mother was tantamount to receipt by Gordon. It has been held that the doctrine of constructive receipt has no place in Title VII jurisprudence, and that a time limit therein does not commence until receipt by the affected employee. *Franks v. Bowman Transp. Co.*, 495 F.2d 398,

404 (5th Cir. 1974), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Archie v. Chicago Truck Drivers Union, supra* note 19, 585 F.2d at 214–216. Compare *Bell v. Brown, supra* note 19, 181 U.S.App.D.C. at 233–234 & n.65, 557 F.2d at 856–857 & n.65. Because I am uncertain as to the basis of the District Court's dismissal ruling, and particularly whether the court passed on the latter question, I do not address it here.

**21.** *Gordon v. National Youth Work Alliance, supra* note 2, (order) (filed Feb. 27, 1981), App. 1. A further difficulty with the District Court's disposition is the additional dismissal of Gordon's claims under 42 U.S.C. §§ 1981, 1985, and the District of Columbia Human Rights Act. See note 2 *supra* and accompanying text. I agree with my colleagues that in this respect the court's action was improper. See note 1.

**22.** See, *e.g.*, *United Airlines v. Evans*, 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571, 579 (1977); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147, 157–158 (1974); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668, 675–676 (1973); *Coles v. Penny*, 174 U.S.App.D.C. 277, 281, 531 F.2d 609, 613 (1976); *Bickham v. Miller*, 584 F.2d 736, 738 (5th Cir. 1978); *Harris v. National Tea Co.*, 454 F.2d 307, 312 (7th Cir. 1971); *Shea v. City of St. Paul*, 601 F.2d 345, 347–348 (8th Cir. 1979).

oft-repeated word "jurisdictional,"[23] and any assimilation to subject-matter jurisdiction generally has been highly ambiguous at best. But seldom have Title VII's time limitations plainly been considered jurisdictional in the sense that nonobservance robs the court of authority to hear and resolve the plaintiff's claim.[24] To the extent that our own "jurisdictional" characterizations of those limitations have been revealing at all, they are irreconcilable with the notion that subject-matter jurisdiction was affected in the least.[25]

At any rate, no reason for any dilemma remains today. Very recently, in *Zipes v. TWA*,[26] the Supreme Court held flatly that timely filing of charges administratively against a private-sector employer[27] is not a jurisdictional precondition to a civil action in a federal court, but a requirement "subject to waiver, estoppel and equitable tolling" just like a statute of limitations.[28] The rationale of that decision leads unerringly to the conclusion that the 90-day suit-filing provision involved here is not a jurisdictional absolute;[29] indeed, the Court had indicated so much a year earlier. In *Mohasco Corp. v. Silver*,[30] the plaintiff missed the 90-day deadline by one day, yet the Court did not *sua sponte* dismiss the plaintiff's action for want of subject-matter jurisdic-

**23.** *Hart v. J. T. Baker Chem. Co.*, 598 F.2d 829, 832 (3d Cir. 1979) ("term 'jurisdictional prerequisite' . . . has crept into Title VII jurisprudence with no explanation of its underlying logic and thus no real guidance in determining its applicability"); *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1298 n.3 (5th Cir. 1979) ("conceptual confusion" apparent in this area).

**24.** Failure to meet Title VII filing deadlines occasionally has been held to destroy subject-matter jurisdiction. See *Hinton v. CPC Int'l, Inc.*, 520 F.2d 1312, 1315 (8th Cir. 1975) (failure to comply with suit-filing time limitations); *Stewart v. Marquette Tool & Die Co.*, 420 F.Supp. 478, 481 (E.D.Mo.), *aff'd*, 527 F.2d 127 (8th Cir. 1975) (failure to comply with administrative charge-filing time limitations); *Alston v. Allegheny Ludlum Steel Corp.*, 449 F.Supp. 553, 556 (W.D.Pa.1978), *aff'd*, 594 F.2d 854 (3d Cir. 1979) (failure to comply with administrative charge-filing time limitations); *Geronymo v. Joseph Horne Co.*, 440 F.Supp. 1157, 1159 (W.D.Pa.1977) (failure to comply with suit-filing time limitations).

**25.** Several years ago, we held that the time limitation in 42 U.S.C. § 2000e–5(d) (1970 ed.), currently codified at 42 U.S.C. § 2000e–5(e) (1976), on filing of charges administratively against a private-sector employer is not a jurisdictional absolute, and thus is subject to equitable modification in appropriate circumstances. *Laffey v. Northwest Airlines*, 185 U.S.App.D.C. 322, 368, 567 F.2d 429, 475 (1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). We found that conclusion unembarrassed by precedent, and that "[n]othing in the legislative history compel[led] us to treat [Title VII's time limitations] as jurisdictional; on the contrary, the legislative history, although very limited on the time provisions, suggest[ed] that Congress intended them to operate similarly to statutes of limitations." *Id.* Adhering to that analogy, we ruled that the filing period could be tolled by a defendant's inequitable conduct.

*Id.* Shortly thereafter, we reaffirmed that position by declaring, in the charge-filing context of 42 U.S.C. § 2000e–16 (1976), that the "requirement that a complainant approach a designated agency within a set period of time after the employer has discriminated is not jurisdictional in the strict sense," and accordingly that the "definition of what is timely need not be determined with the harshness characteristic of jurisdictional requirements." *Bethel v. Jefferson*, 191 U.S.App.D.C. 108, 119 & n.64, 589 F.2d 631, 641 & n.64 (1978). More recently, we reiterated "that the time restrictions on filing charges . . . is not jurisdictional, but subject to extension in deserving cases." *Shehadeh v. Chesapeake & Potomac Tel. Co., supra* note 19, 193 U.S.App.D.C. at 333 n.23, 595 F.2d at 718 n.23.

**26.** —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

**27.** See 42 U.S.C. § 2000e–5(d) (1970 ed.), currently codified at 42 U.S.C. § 2000e–5(e) (1976).

**28.** *Zipes v. TWA, supra* note 26, —— U.S. at ——, 102 S.Ct. at 1132.

**29.** The Court drew upon the text of the limitation provision, the structure and underlying remedial purpose of Title VII, elements of the legislative history, and the reasoning of the Court's prior decisions. *Id.* at ——, 102 S.Ct. at 1132–1135. These considerations are as instructive for Title VII's suit-filing as for its charge-filing specifications. *Cf. Saltz v. Lehman*, 672 F.2d 207 (D.C.Cir.1982), at 208 (analysis in *Zipes* is equally applicable to the charge-filing restriction set forth in 42 U.S.C. § 2000e–5(e)–(f) (1976)).

**30.** 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

tion in the district court.[31] Rather, the Court merely noted that the defendant "did not assert [the plaintiff's] failure to file the action within 90 days as a defense," [32] and proceeded to the merits of the case.[33] At least one circuit has ruled that nonsatisfaction of the 90-day requirement does not deprive the court of jurisdiction,[34] and I am in full accord.

That is not to say, however, that the 90-day restriction on suit-filing lacks either certainty or importance when viewed in its proper operative mode. Like its many counterparts in a great variety of contexts, it is an instrument of repose, designed to protect employers from stale claims.[35] Normally, timeliness is an essential element of the employee's claim, and is indispensable to success on the merits.[36] By the same token, I believe untimeliness invites the same consequences attendant upon tardiness in complying with ordinary statutes of limitation.[37]

It follows that the 90-day provision may be invoked by a motion asserting that for nonobservance of its time requirement, the plaintiff's complaint does not state a claim upon which relief can be granted. Such a motion falls well within the purview of Rule 12(b)(6),[38] and activates the procedural machinery supplied for motions in that category. The motion confines the court to the face of the complaint,[39] and garners a dismissal only if the complaint itself makes evident that the action is time-barred.[40] Alternatively, the court may decide to treat the motion as one for summary judgment, in which event it may look additionally to extrinsic materials of the types designated

**31.** If observance of the 90-day period were in fact an essential component of subject-matter jurisdiction, *sua sponte* dismissal of the claim would have been the appropriate course of action. See note 11, *supra.*

**32.** *Mohasco Corp. v. Silver, supra* note 30, 447 U.S. at 811 n.9, 100 S.Ct. at 2489 n.9, 65 L.Ed.2d at 539 n.9.

**33.** See *id.* at 826, 100 S.Ct. at 2497, 65 L.Ed.2d at 539.

**34.** See *Brown v. Mead Corp.,* 646 F.2d 1163, 1165 (6th Cir. 1981); *Fox v. Eaton Corp.,* 615 F.2d 716, 718 (6th Cir. 1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981); *cf. Leake v. University of Cincinnati,* 605 F.2d 255, 259 (6th Cir. 1979) (administrative charge-filing time limitations).

**35.** *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713, 727 (1974); *Burnett v. New York Cent. R. R.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941, 945 (1965); *Macklin v. Spector Freight Sys.,* 156 U.S.App.D.C. 69, 84 n.30, 478 F.2d 979, 994 n.30 (1973). "Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Burnett v. New York Cent. R.R., supra,* 380 U.S. at 428, 85 S.Ct. at 1054, 13 L.Ed.2d at 945, quoting *Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S. 342,

348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944).

**36.** *EEOC v. Louisville & N.R.R. Co.,* 505 F.2d 610, 613–614 (5th Cir. 1974), *cert. denied,* 423 U.S. 824, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Kalmich v. Bruno,* 553 F.2d 549, 553 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1165 (S.D.N.Y.1974); *In re Caesars Palace Secs. Litig.,* 360 F.Supp. 366, 377 (S.D.N.Y.1973); *cf. United States v. Sweet Homes Cent. School Dist.,* 407 F.Supp. 1362, 1364 (W.D.N.Y.1976) (statutory requirements of charge, notice, investigation, determination of reasonable cause, and conciliation by EEOC are best regarded as parts of cause of action).

**37.** See text *supra* at note 28; *Saltz v. Lehman, supra* note 29.

**38.** The cases so holding are legion. See the collections in 5 C. Wright & A. Miller, Federal Practice § 1357 at 608 (1969); 2A J. Moore & J. Lucas, Federal Practice ¶ 12.10 at 2314–2316 (1981).

**39.** Fed.R.Civ.P. 12(b); 5 C. Wright & A. Miller, Federal Practice § 1356 at 592 (1969); see also cases cited *infra* note 43.

**40.** *E.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979); *Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir. 1980). See generally 5 C. Wright & A. Miller, Federal Practice § 1357 (1969).

by Rule 56.[41] The court may, however, resort to this technique only after "all parties [are] given reasonable opportunity to present all materials [thus] made pertinent ...,"[42] and cannot grant the motion unless it appears from authorized data that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law.[43] If the motion cannot survive these demands, the court must remit the factual disputes to trial.[44]

That, I believe, is the course the District Court should have followed here. Accordingly, I join in reversal and remand in order that it may now be done.[45]

---

**41.** Fed.R.Civ.P. 12(b); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569, 572 (1972); *Shehadeh v. Chesapeake & Potomac Tel. Co., supra* note 19, 193 U.S.App. D.C. at 334 n.41, 595 F.2d at 719 n.41; *Mazaleski v. Truesdale,* 183 U.S.App.D.C. 182, 189, 562 F.2d 701, 708 (1977); *Fagan v. National Cash Register Co.,* 157 U.S.App.D.C. 15, 26 n.25, 481 F.2d 1115, 1126 n.25 (1973); *Sims v. Mercy Hosp.,* 451 F.2d 171, 173 (6th Cir. 1971). Summary-judgment motions must be served at least ten days prior to the hearing date. Fed.R. Civ.P. 56(c). At least one court has interpreted the interplay of Rules 12 and 56 as requiring that parties receive at least ten days notice that a 12(b)(6) motion to dismiss is being converted by the court into a motion for summary judgment. See *Hickey v. Arkla Indus., Inc.,* 615 F.2d 239, 240 (5th Cir. 1980).

**42.** Fed.R.Civ.P. 12(b), 56(c). Rule 12(b) provides:

> If, on the motion asserting the defense ... [of] failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

See also *Gould, Inc. v. Chafee,* 146 U.S.App. D.C. 206, 208, 450 F.2d 667, 669 (1971); *Dale v. Hahn,* 440 F.2d 633, 638 (2d Cir. 1971), *cert. denied,* 419 U.S. 826, 95 S.Ct. 44, 42 L.Ed.2d 50 (1974); *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir. 1980); *Cooper v. Bell,* 628 F.2d 1208, 1210 (9th Cir. 1980).

**43.** Fed.R.Civ.P. 56(c); *Carter v. Stanton, supra* note 41, 405 U.S. at 671, 92 S.Ct. at 1234, 31 L.Ed.2d at 572; *Taton v. La Prade,* 524 F.2d 862, 867 (3d Cir. 1975); 10 C. Wright & A. Miller, Federal Practice § 2725 (1973).

**44.** See *Oaxaca v. Roscoe,* 641 F.2d 386, 392 (5th Cir. 1981).

**45.** The Civil Rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Gordon's complaint is devoid of any allegation concerning the right-to-sue notice, although a copy of the notice was attached to the complaint. Complaint (filed Jan. 7, 1981), *Gordon v. National Youth Work Alliance, supra* note 2, App. 2. Consequently, I would direct the District Court on remand to grant Gordon leave to amend her complaint by allegations of receipt and timely action upon the notice.