**Carolyn L. O'NEAL, Plaintiff,**

v.

**MARINE MIDLAND BANK, N.A., Defendant.**

**Carolyn L. O'NEAL, Plaintiff,**

v.

**ROBERT HALF OF BUFFALO, INC., Defendant.**

**Nos. 91–CV–813S, 91–CV–814S.**

United States District Court, W.D. New York.

March 31, 1994.

Gerald T. Walsh, Zdarsky, Sawicki & Agostinelli, Buffalo, NY, for plaintiff.

Scott D. Miller, Buffalo, NY, for defendant Marine Midland.

Robert LaBerge, Bond, Schoenech & King, Syracuse, NY, for defendant Robert Half.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court are defendants objections to the Report and Recommendation ("R & R") of Hon. Edmund F. Maxwell, United States Magistrate Judge for the Western District of New York, recommending that this Court deny defendants' motions for summary judgment. For the reasons stated below, this Court will accept the recommendation of the magistrate judge to deny defendants' motions for summary judgment based on the claim that statute of limitations expired, and modify his recommendation with respect to defendants' motions for summary judgment based on the merits. Defendants' motions for summary judgment on the merits shall be denied on separate grounds without prejudice and with leave to reinstate.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Carolyn O'Neal filed both of these actions on December 16, 1991 alleging that the defendants subjected her to unlawful discrimination based on her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* In both actions, this Court filed Orders on March 8, 1992 referring all dispositive pretrial motions to Magistrate Judge Maxwell. On March 31, 1993, defendant Marine Midland Bank filed a motion for summary judgment. Likewise, on April 1, 1993, defendant Robert Half filed a motion for summary judgment. Magistrate

Judge Maxwell filed a Report and Recommendation on September 24, 1993 recommending that defendants' motions for summary judgment be denied. Thereafter, both defendants filed timely objections to the Magistrate's Report and Recommendation.

The parties raise no specific objections to the factual findings contained in Magistrate Judge Maxwell's Report and recommendation that are material to resolution of the present issues. Therefore, this Court adopts those findings, and will not repeat them here.

Defendants' objections to the Magistrate Judge's Report and Recommendation are based on identical grounds. First, defendants have objected to Magistrate Judge Maxwell's conclusion that there is an issue of fact as to whether the plaintiff's action was time barred. More specifically, to be timely, plaintiff's causes of action must have been commenced within 90 days of her receipt of the Right to Sue Notice from the Equal Employment Opportunity Commission ("EEOC"). In both cases, the EEOC Notice was sent to plaintiff by certified mail, and the certified mail receipt indicated that the Notices were received on September 3, 1993 with respect to the Robert Half cause of action and on September 4, 1993 with respect to the Marine Midland cause of action. Defendants claim that these receipts establish the date on which the Notices were received, and plaintiff's evidence that she received the Notices on a much later date is insufficient, in light of the defendants compelling proof, to create a triable issue of fact. Defendants second objection relates to the magistrate judge's conclusion that the proof offered by the parties in support and opposition to the defendants' motions for summary judgment has "merely set up a contest of credibility, which is a question only for the factfinder." (R & R at 6.)

### DISCUSSION

A. *Standard of Review under § 636(b)(1)(B)*

Under 28 U.S.C. § 636(b)(1)(B) a district court judge may designate a magistrate judge to conduct a hearing and submit proposed findings of fact and recommenda-

tions for disposition of a party's motion for summary judgment. The district court is not bound by the recommendation of the magistrate judge, rather it may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). However, the parties have an opportunity to object to the magistrate judge's proposed findings, and upon the filing of timely objections, the district judge must conduct a *de novo* review of the Magistrate Judge's Report and Recommendation "upon the record, or after additional evidence", but only as to those portions of the Report and Recommendation to which the party objects. *Id.;* Fed.R.Civ.P. 72(b); *See also Collins v. Foreman,* 729 F.2d 108, 112 (2d Cir.1984), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). The district court is not required to conduct a *de novo* hearing, but must arrive at its own independent conclusion about those portions of the Magistrate Judge's Report and Recommendation to which the objection is made. *East River Sav. Bank v. Secretary of Housing and Urban Dev.,* 702 F.Supp. 448 (S.D.N.Y.1988). It is application of these principles that guide this Court in ruling on defendant's objections to Magistrate Judge Maxwell's Report and Recommendation.

## B. *Summary Judgment Standard*

■ Under the plain language of Federal Rule of Civil Procedure 56(c), entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party has the "initial responsibility" to demonstrate the absence of a material factual dispute." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. This burden does not require the moving party to support its motion with affidavits or other similar materials negating the opponents claim." *Id.* The moving party's burden has been met if whatever is before the court demonstrates that the standard for the entry of summary judg-

ment has been met. Much like the standard for deciding a motion for judgment as a matter of law under Rule 50(a), "[f]or a plaintiff to avoid summary judgment, there must be sufficient evidence from which a jury could find for the plaintiff." *Laidley v. McClain,* 914 F.2d 1386, 1390 (10th Cir.1990) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)); *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

■ If the moving party satisfies its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Once the non-moving party has come forward with specific facts in support of his claim, "the question of what weight should be assigned to competing permissible inferences remains within the province of the fact-finder at a trial." *Apex Oil Co. v. Di Mauro,* 822 F.2d 246, 253 (2d Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). However, courts should not be reluctant to grant summary judgment in appropriate cases since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

■ While discrimination cases typically involve a plaintiff's allegations of defendant's discriminatory intent, that does not immunize the case from summary judgment if the allegations are conclusory and the defendant's motion is supported by an evidentiary record. The Second Circuit Court of Appeals made this plain in *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985), when it stated:

The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing tri-

als—apply no less to discrimination cases than to commercial or other areas of litigation.

*Id.,* 759 F.2d at 998.

## C. *Statute of Limitations*

This Court first addresses the question of whether plaintiff's causes of action are, as a matter of law, time barred. Plaintiff alleges that she has been subject to race discrimination and retaliatory treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–1 *et seq.* Before discussing the specific facts relating to the issue of the statute of limitations in the present case, this Court shall first examine the relevant legal principles which must be considered in making a determination of whether a discrimination action under Title VII has been timely commenced in federal district court.

 Section 706 of Title VII provides in relevant part:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, ... the Commission, ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

42 U.S.C. § 2000e–5(f)(1). In *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court recognized that the time limitations imposed under Title VII are not jurisdictional but rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *See also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 2395 n. 3, 76 L.Ed.2d 628 (1983) (Noting that the argument characterizing the 90–day period to commence suit after notice of right-to-sue is given as jurisdictional is foreclosed). In addition, although applying a statute of limitations to bar a claimant's cause of action where it has been filed only a few days outside the limitations period is somewhat harsh, the Supreme Court has explicitly recognized that the "[p]rocedural requirements established by Congress for gaining access to federal courts are not to be disregarded by

courts out of vague sympathy for particular litigants ... '[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (*quoting Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980)). Thus, application of § 706 requires that a civil rights plaintiff proceeding under Title VII in this Circuit must commence their cause of action within 90 days of "actual receipt" of the right-to-sue notice from the EEOC. *Sousa v. NLRB,* 817 F.2d 10, 11 (2d Cir.1987); *Gonzalez v. Long,* 1992 WL 75032, *1, 1992 U.S.Dist.LEXIS 3866, *2 (E.D.N.Y. Mar. 19, 1992).

 In addition, upon a careful reading of the language of § 2000e–5(f)(1), it is apparent that the ninety day period runs from "the giving of such notice," rather than from the date the claimant actually "receives" notice in hand. *Spears v. Frank,* 1992 WL 232510, *1–2, 1992 U.S.App.LEXIS 23602, *3–4 (9th Cir. Sept. 22, 1992). Many courts have recognized that when the timeliness of a plaintiff's complaint is questioned, a court should endeavor to closely scrutinize the reasons why claimant's actual receipt of the "right-to-sue" letter was delayed because a plaintiff should not enjoy a manipulable open-ended time extension which could render the statutory time limitation meaningless. *Scholar v. Pacific Bell,* 963 F.2d 264, 268 (9th Cir.1992) *(citing Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1242 (11th Cir. 1982)), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992). Application of this principle has produced numerous circuit court decisions holding "that the 90 day period runs from the day the notice is received by someone at the claimant's residence, such as a spouse or a high school age child, even if the worker does not see the notice until days or weeks later." *Griffin v. Prince William Hospital Corp.,* 716 F.Supp. 919, 921 & n. 5 (E.D.Va.1989); *See also Rowe v. Sullivan,* 967 F.2d 186, 191 (5th Cir.1992) (receipt of notice by claimant's wife starts clock running); *Scholar v. Pacific Bell,* 963 F.2d at

268 (filing period began to run were right-to-sue letter was received by claimant's daughter, even though claimant did not learn of letter until five days later); *Lomans v. Monmouth Chemical Dependency Treatment Center, Inc.*, 1992 WL 281107, *2, 1992 U.S.Dist.LEXIS 15450, *6–7 (D.N.J. Oct. 5, 1992) ("delivery to a plaintiff's address of record is sufficient to trigger the commencement of Title VII's ninety-day period, even though plaintiff does not receive actual notice until sometime later.") Unlike these decisions, a question of "constructive receipt" is not present in this case since the actual "right-to-sue" letter was never delivered to plaintiff's residence or post office box, rather it remained in the possession of the post office.[1]

■ However, in addition to the concept of constructive receipt, there are other doctrines which courts have applied to limit the ability of Title VII claimants to manipulate the time at which notice is considered to be "given." Of significance in the present case is the "fault doctrine" which recognizes that a plaintiff must take reasonable steps to ensure her actual receipt of a right to sue letter; otherwise, she will be deemed to receive the letter when it arrives at the most recent address that she provided to the EEOC.[2] *St. Louis v. Alverno College*, 744 F.2d 1314, 1316–17 (7th Cir.1984); *Jones v. Madison Service Corp.*, 744 F.2d 1309, 1313 n. 6 (7th Cir.1984). While the cited cases deal primarily with situations where a claimant's delay in receiving the "right-to-sue" letter is the result of failing to provide the EEOC with an updated address, the fault doctrine requires that a claimant take all "reasonable steps to ensure that [she will] receive mail." *St. Louis*, 744 F.2d at 1317; *See also Stallworth v. Wells Fargo Armored Services Corp.*, 936 F.2d 522, 524 (11th Cir. 1991) ("a plaintiff is required to assume some minimal responsibility to ensure receipt.") In other words, any "delay in the claimant receiving the notice that is caused by the fault of the claimant will not delay the running of the statute of limitations." *King v. Rolm Co.*, 1992 WL 133023 at *3–4, 1992 U.S.Dist.LEXIS 8055 at *10–11. Such fault has been held to exist where "failure to receive a right to sue letter is due to plaintiff's failure to check her mailbox or to pick up certified mail waiting for her at the post office." *Bond v. American Medical Association*, 764 F.Supp. at 125; *See also Watts–Means v. Prince George's Family Crisis Center*, 7 F.3d 40, 41–42 (4th Cir.1993) (where plaintiff receives notice to pick up certified letter but waits five days to claim letter at post office, the limitation clock starts to run on date plaintiff receives the notice rather than date of actual receipt of the letter); *Clark v. Western Union Telephone Co.*, 1990 WL 130688, *1, 1990 U.S.App.LEXIS 16272, *5 (7th Cir. Sept. 12, 1990) (Delivery of right to sue letter, by certified mail, to plaintiff's post office box

---

1. Delivery of the certified letter was attempted, but never accomplished. Instead, a PS Form 3849 was placed in plaintiff's post office box to notify her of the existence of the letter. It is unclear whether a similar notice was left at her residence. While some courts have broadly stated that "the statutory period in Title VII begins to run, absent equitable considerations, upon delivery to the address provided by plaintiff," *Lomans*, 1992 WL 281107 at *3, 1992 U.S.Dist.LEXIS 15450 at *8, the Second Circuit has made clear that the constructive receipt rule does not apply when a 3849 Form is delivered to a post office box. *Sousa*, 817 F.2d at 11. Thus, at the outset, this "Court wishes to make clear that it is not holding that the receipt of a post office notice of an attempt to deliver mail amounts to constructive receipt." *Bond v. American Medical Association*, 764 F.Supp. 122, 125 n. 2 (N.D.Ill.1991).

2. Although neither party's submissions address whether the fault doctrine should be applied in the present case, plaintiff's deposition testimony as well as the responses of plaintiff's counsel at oral argument reflect that its applicability should be considered. Specifically, at oral argument plaintiff's counsel, when questioned as to what the dates stamped in the certified mail receipts represent if they do not indicate when plaintiff picked up her letters, he responded that they reflect the dates that the notices to pick up the certified letters were placed in plaintiff's post office box. Additionally, during her deposition, plaintiff stated "I might get there once every two weeks. When I'm at school and busy and staying at Niagara, I leave before it opens and get home after it closes and they might not see me for three weeks. If I'm here and in Niagara I might pick it up once a week." (Miller Aff.Exh. 5 at 72.) *Compare King v. Rolm Co.*, 1992 WL 133023, *3–5, 1992 U.S.Dist.LEXIS 8055, *10–15 (N.D.Ill. June 4, 1992).

triggered 90–day statute of limitations where letter was unclaimed for two weeks); *Hunter v. Stephenson Roofing, Inc.,* 790 F.2d 472, 475 & n. 7 (6th Cir.1986) (Time period begins five days after certified letter is initially placed in the mail).

Significantly, the applicability of the fault doctrine to situations where a plaintiff has failed to check her mailbox or pickup up certified mail was specifically acknowledged by the Second Circuit in *Sousa*. As in the present case, the claimant in *Sousa* was sent a letter advising him that he had a "right to file a civil action in the federal district court within thirty days of receipt of the notice of dismissal ... The letter was sent by certified mail to a post office box maintained by [the claimant]." *Id.,* 817 F.2d at 10. The facts demonstrated that a notice to claim the certified letter was first placed in the claimant's box on September 5, 1985. On September 10, 1985 the claimant checked his mailbox and went to the proper post office counter to claim his certified letter. Rejecting the argument that there was constructive receipt of the notice on September 5, 1985, the Second Circuit stated

> [t]he receipt by [the claimant] of the notice on September 10 is the effective date for measuring the 30–day period. A 5–day delay, which included a weekend, is not an unreasonable time for Sousa to have failed to visit the box. *It may be that the unexplained failure to visit a post office box for a long period of time might result in a different conclusion.*

*Id.,* 817 F.2d at 11 (emphasis added). Thus, the Second Circuit clearly indicated that when a claimant cannot offer a reasonable explanation for her failure to check her mailbox or pick up certified mail for an extended amount of time the 90–day statute of limitations clock should begin to run on a date before actual receipt of the right-to-sue notice.

In the present case, defendants claim that plaintiff failed to commence these actions within 90 days of being given notice that she had a right to commence an action in district court. However, as shall be more fully set forth *infra,* this Court finds that the record regarding the circumstances which preceded plaintiff's actual receipt of the right-to-sue notice has not been fully developed, and, as a result factual issues presently exist which preclude entry of summary judgment.

Defendant Robert Half argues that the EEOC mailed a right-to-sue letter to plaintiff on August 30, 1991. (LaBerge Aff. ¶ 4.) This fact is corroborated by the date contained in the letter as well as the post mark date on the envelope. (LaBerge Aff.Exh. C & E.) Furthermore, a date stamp on the certified mail receipt indicates that the letter was received at the post office where plaintiff's post office box is located on August 31, 1991. (LaBerge Aff.Ex. F—handwritten notation by John Z. Wiatr clarifying date illegible in photocopy.) Further, a copy of the right-to-sue notice which was simultaneously mailed to defendant Robert Half's counsel was received on September 3, 1991 in Syracuse, New York. (LaBerge ¶ 5.) Plaintiff has not challenged these facts.

Defendant Robert Half also asserts that when a certified letter is sent to a post office box, a notice is placed in the addressee's box informing her that a certified letter should be claimed at the post office counter. (LaBerge Aff. ¶ 10.) In addition, defendant notes that the certified mail receipt corresponding to the envelope which contained plaintiff's right-to-sue notice was signed by plaintiff and has the date September 3, 1991 stamped in the lower left hand corner. (LaBerge Aff.Exh. F.)[3] Based on these facts, defendant claims that "the box in the lower left hand corner indicates the date on which the addressee received and signed for the certified mail." (LaBerge Aff. ¶ 10.) However, defense counsel does not support this proposition with any evidence that may properly be considered for purposes of summary judgment. Fed. R.Civ.P. 56(e) ("[s]upporting and opposing affidavits ... shall set forth such facts as would be admissible in evidence"); *Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 510 (2d Cir.1989); *Canada v.*

---

**3.** The photocopy of the certified mail receipt may properly be considered for purposes of a summary judgment motion because it is a business record. *Rowe v. Sullivan,* 967 F.2d at 191; Fed. R.Evid. 1003.

*Blain's Helicopters, Inc.,* 831 F.2d 920, 925 (9th Cir.1987). Specifically, in support of this claim LaBerge's attorney's affidavit references the hearsay statements of John Z. Wiatr, an employee at the Claims and Inquiry Division of the Niagara Falls Post Office, made during a telephone conversation. The hand written notations on photocopy of the receipt also appear to be inadmissible hearsay. Nevertheless, the certified mail receipt with respect to the defendant Robert Half notice does, standing alone, indicate that the letter was "delivered" on September 3, 1993.

Defendant Marine Midland has offered a similar argument that plaintiff's commencement of this cause of action was untimely. With respect to Defendant Marine, the right-to-sue letter, the envelope it was contained in, and the certified mail receipt have been produced. (Johnson Aff.Exh. A.) The right-to-sue letter is dated August 30, 1991. (Patterson Aff.Exh. 1.) Further, the envelope contains a post mark date of August 30, 1991. (Miller Aff.Exh. 2; O'Neal Aff.Exh. B.) Finally, the certified mail receipt contains a stamped "delivered by" date of September 4, 1991. (Johnson Aff.Exh. A.) Plaintiff does not dispute these facts.

Defendant Marine has claimed that the certified mail receipt conclusively establishes that plaintiff received the right-to-sue letter on September 4, 1991. In support of this argument, Marine has submitted the affidavit of Paul Johnson, Postmaster for the United States Postal Service branch office of North Tonawanda. (Johnson Aff. ¶ 1.) Johnson indicates that the date stamped in the "delivered by" box "is the date the addressee picks up or receives the letter. The date is not pre-dated or back-dated" (Johnson Aff. ¶ 4.) Johnson further explains that when a certified letter is addressed to a post office box or a person is otherwise unavailable at the residence the certified letter is addressed to, "the United States Postal Service would place a notification in the addressee's mailbox." (Johnson Aff. ¶ 5.) Finally, Johnson asserts, based upon his review of the receipts and envelopes corresponding to the right-to-sue notices in both actions, that September 4, 1991 is the date plaintiff picked up the right to sue notice corresponding to defendant Ma-

rine, and September 3, 1991 is the date she picked up the right-to-sue notice corresponding to defendant Robert Half. (Johnson Aff. ¶¶ 6–8.)

Faced with this compelling evidence that she received the right-to-sue letters on September 3 and September 4, plaintiff claims that she did not actually receive the letters until September 16 or some time thereafter. With respect to defendant Robert Half, plaintiff states "[a]lthough I am not sure of the exact date on which I received the notice of determination, I believe I received it on or after September 16, 1991." (O'Neal Aff. ¶ 20.) Similarly, regarding defendant Marine, plaintiff states "[a]lthough I am not sure today of the exact date on which I received the notice of determination, I believe I received it on or after September 20, 1991" (O'Neal Aff. ¶ 22; Walsh Aff. ¶ 4).

These statements alone take this case beyond the scope of *Rowe v. Sullivan,* 967 F.2d 186, which defendant Robert Half argues establishes that a certified mail receipt is conclusive proof of when a letter was received. In *Rowe* the Court stated "it does not suffice for [the claimant] to merely state that the documents of record were in error." *Id.,* 967 F.2d at 191. However, in *Rowe,* the right-to-sue notice was delivered to the claimant's wife while the claimant was out of town, and the claimant had no personal knowledge of when the letter was actually delivered. *Id.* Further, the claimant did not submit an affidavit from his wife, a person with personal knowledge of when the letter was delivered. *Id.* In the present case, plaintiff personally received the letters in question, thus she has personal knowledge of when the letters were delivered. As such, *Rowe* decision does not control in the present case. It may be, however, that plaintiff's conclusory assertion of when she received these notices, standing alone and unsupported by other evidence, would be insufficient to defeat defendants' motions for summary judgement. *See Williams v. Miracle Plywood Corp.,* 1990 WL 26310, *5, 1990 U.S.Dist.LEXIS 2502, *15 (S.D.N.Y. March 8, 1990) ("[i]n the face of defendants' assertion as to the validity of the submitted receipt, the Court holds that plaintiff's counsel

continued reliance on plaintiff's unsubstantiated assertion as to the date of receipt may not be sufficient" to avoid imposition of Rule 11 sanctions). This Court need not reach that issue at the present time because plaintiff has provided other evidence which may support her claim.

As evidence that she did not receive the right-to-sue letters until after September 16, 1991, plaintiff refers to notations on the front of the envelopes the right-to-sue letters were sent in: "9/5" and "9/16" with respect to the Robert Half envelope and "9/9 box" and "9/20 MPO" with respect to the Marine Midland envelope.[4] To explain the significance of these dates, plaintiff has submitted the affidavit of Lucy Parker, a postal clerk employed at the Main Post Office in Niagara Falls, New York. Ms. Parker indicates that the dates on the envelopes were written by post office employees and are for post office use only. (Parker Aff. ¶ 7.) Parker further asserts that the earlier of the two dates is a "second notice date" and the later of the two dates is the date on which the mail would be returned to the sender if it has not been picked up by the addressee. (Parker Aff. ¶ 7.) Thus, the dates on the envelope may represent a prospective schedule for the handling of the letter once the initial attempt to deliver the letter fails.[5]

On the other hand, defendants have submitted a second affidavit of Postmaster Johnson to respond to Parker's opinion regarding the significance of the dates handwritten on the front of the envelopes. Johnson indicates that postal procedures provide that first and second notice dates be placed on certified mail envelopes to indicate the dates upon which delivery of the letter was attempted. (Johnson 2 Aff. ¶¶ 4–7.) However, Johnson indicates that the dates on the letters do not conform to postal procedure because there is no "First Notice" or Second Notice" language present. (Johnson 2 Aff. ¶ 8.) As such, Johnson concludes that the "notations on the envelopes are not the type the United States Postal Service would make and are of no significance to determining the date upon which plaintiff received the right-to-sue letters.

Parker and Johnson offer different opinions regarding the postal procedure by which the dates in question would have been placed on the envelopes. In addition, this matter is also clouded by the fact that the right-to-sue letters were addressed to plaintiff's residence, yet they were apparently delivered to her post office box. (O'Neal Aff. ¶ 23.) None of the parties have addressed the significance of this fact. In addition, if there was initially an attempt to deliver the letter to plaintiff's residence, it is unclear whether a notice to claim the letter was left. Thus, based on the pleadings presently before this Court factual issues remain regarding the date that delivery was first attempted, the date that notice was first left in plaintiff's post office box, and the date that plaintiff came forward and claimed the right-to-sue letters. Because issues of fact presently exist regarding these matters, defendants' motions for summary judgment on the issue of the statute of limitations must be denied.

While resolution of the statute of limitations question cannot be accomplished based on the pleadings presently before this Court, the case dispositive significance of this issue demands that it be resolved before this Court proceeds to analyze the merits of plaintiff's claims. In similar situations, where resolution of a single issue may resolve an entire case, it has been noted that "defendants are entitled to an appropriate trial or hearing on that issue before they are

---

4. Plaintiff has also indicated that she inquired of postal workers regarding the significance of these dates and was told that they are post office notations indicating "when the letter was either delivered to my box or was returned from the post office near where I live." (O'Neal Aff. ¶ 22; O'Neal Aff. ¶ 20.) However, these statements in her affidavit are based on hearsay and may not be considered for purposes of a summary judgment motion. Fed.R.Civ. 56(e).

5. Parker's affidavit standing alone does not support plaintiff's claim that she received the letters after September 16 and September 20, respectively. Specifically, Parker's affidavit suggests that plaintiff could not have picked up the letters on or after these dates since they would have been returned to the sender by such time. However, review of Johnson's second affidavit, discussed *infra*, demonstrates that if the notations on the envelopes were made by postal employees they might support plaintiff's claim.

put to the time and expense of a full-blown trial on the merits of the entire case." *Nardone v. Reynolds,* 538 F.2d 1131, 1137 (5th Cir.1976). Applying this rationale in a case involving a Title VII statute of limitations scenario quite similar to the present case the Court of Appeals for the District of Columbia noted that because

> the plaintiff has no right to a jury trial on the issue,[6] a court has considerable latitude in determining a statute of limitations issue even if the facts remain in dispute after the parties have an opportunity to augment the record ... The obvious solution is to deny the motion for summary judgment without prejudice and then hold a limited evidentiary hearing on the timeliness issue before proceeding to a full trial on the merits.

*Gordon v. National Youth Work Alliance,* 675 F.2d 356, 360–61 n. 3 (D.C.Cir.1982).

The procedure identified in *Gordon* has been applied by courts in this circuit. In *Marino v. National R. Passenger Corp. (Amtrak),* 645 F.Supp. 816 (S.D.N.Y.1986), the plaintiff filed a discrimination action under Title VII against the defendant. Thereafter, defendant moved for summary judgment arguing that signed and stamp dated certified mail receipts conclusively established that plaintiff had received the right-to-sue letters on July 13, 1983. However, plaintiff and his attorney submitted affidavits claiming that the certified letters were not picked up at the post office until July 20, 1983. To explain the inconsistency, plaintiff argued that the stamped dates reflected when the post office received the certified letters. The district court held that an issue of fact existed as to when plaintiff received the right-to-sue notices and denied defendant's motion for summary judgment. In conclusion, the Court stated "it is ordered that an evidentiary hearing be conducted before this Court on this limited issue prior to trial on the merits of. this action." *Id.,* 645 F.Supp. at 819.

This Court finds that a procedure identified in *Gordon* and *Marino* should be used in the present case before the merits of plaintiff's claims are addressed. Because defendants' present motions for summary judgment based on the statute of limitations issue were denied, in part, based upon the insufficiency of the record presently before Court, it may be that the proof offered at the to be scheduled hearing will be not raise any factual issues. In such a situation, the Court will

---

6. The Civil Rights Act of 1991 (the "Act") provides that Title VII plaintiffs may recover compensatory and punitive damages, and that plaintiffs seeking such damages may seek a jury trial. *Curtis v. Metro Ambulance Service, Inc.,* 982 F.2d 472, 473 (11th Cir.1993). The effective date of the Act is November 21, 1991. Although the Supreme Court has not addressed the issue of whether the Act should be applied retroactively, the present law in this Circuit dictates that it shall not. *Butts v. New York Dept. of Hous. Preservation & Dev.,* 990 F.2d 1397, 1404–11 (2d Cir.1993). More recently, the Second Circuit was faced with a district court decision that the provisions of the Act regarding the right to compensatory and punitive damages and the corresponding right to have a jury trial on such issues were procedural in nature and, therefore, they should be applied retroactively. *Wisdom v. Intrepid Sea–Air Space Museum,* 993 F.2d 5, 6 (2d Cir.1993). The Second Circuit reversed, indicating that under *Butts* the law of this Circuit requires that these provisions of the Act do not apply retroactively. *Wisdom,* 993 F.2d at 7; *See also Hughes v. Matthews,* 986 F.2d 1168 (8th Cir.1992) (Affirming district court's determination that the compensatory and punitive damages provisions of the Act, as well as the corresponding right to a jury trial on these issues, were substantive changes in the law and should not be applied retroactively).

This case presents an issue somewhat distinct from that presented in the identified case law. Specifically, the Act went into effect on November 21, 1991 and, approximately three weeks thereafter on December 16, 1991, plaintiff filed these causes of action. As such, this is not a case in which the law changed while the matter was pending before the district court. Essentially, these facts require this Court to determine whether it would involve retroactivity to apply the provisions of the Act to this case. The Second Circuit addressed the meaning of prospective and retroactive in *Walsche v. First Investors Corp.,* 981 F.2d 649 (2d Cir.1992). Therein, the court stated "[w]here a new rule alters substantive rights, to apply the new rule prospectively means to apply it to claims based *on conduct* occurring from that time forward." *Id.,* 981 F.2d at 654 (emphasis added). As previously discussed, the identified provisions of the Act address substantive rights. Thus, under the law of this Circuit affording plaintiff the right to a jury trial would require retroactive application of the Act. Therefore, based on clear precedent in this Circuit, this Court finds that plaintiff is not entitled to a jury trial in this matter. Rather, this Court is to serve as the fact-finder.

entertain a motion for summary judgment and, if appropriate, render a decision based upon the undisputed facts developed at such hearing pursuant to Federal Rules of Civil Procedure 43(e) and 56. *See generally Hayden v. First National Bank of Mt. Pleasant Texas,* 595 F.2d 994, 997 (5th Cir.1979). If factual issues are present, this Court, acting as the factfinder, shall weigh the evidence and make a factual determination as to whether plaintiff's complaints were filed in a timely fashion.

## CONCLUSION

Having considered the parties submissions and for the reasons identified herein, defendants' motion for summary judgment on the claim that plaintiff failed to timely commence these actions is denied. Additionally, pending resolution of the statute of limitations issue, this Court declines to address defendants' motions for summary judgment addressed to the merits' of plaintiffs' claims. Finally, as set forth below, counsel for the parties shall appear before this Court for a status conference to schedule an evidentiary hearing to resolve the question of whether plaintiff's causes of action are time barred.

## ORDER

IT HEREBY IS ORDERED, that defendants' motions for summary judgment based on the claim that plaintiff's causes of action are untimely are DENIED without prejudice.

FURTHER, that defendants' motions for summary judgment based on the merits of plaintiffs' causes of action shall be deemed WITHDRAWN, with leave to reinstate without refilling upon completion of the upcoming hearing.

FURTHER, that counsel for the parties shall appear before this Court on Wednesday, April 27, 1994, at 9:00 a.m. in Part IV, Mahoney State Office Building, 65 Court Street, Buffalo, New York for a status conference.